# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TANYA MCCARTNEY** and **MARK MONTGOMERY III**, Individually and as Administrators of the **ESTATE OF KAIDON A. MONTGOMERY,**<br>701 3rd Avenue, 1st Floor<br>Altoona, PA 16602<br><br>*Plaintiffs*<br><br>v.<br><br>**KIDS 2, INC. f/k/a KIDS II, INC.**<br>3333 Piedmont Road, Suite 1800<br>Atlanta, GA 30305<br><br>and<br><br>**KIDS 2, INC. d/b/a, t/a, a/k/a INGENUITY**<br>3333 Piedmont Road, Suite 1800<br>Atlanta, GA 30305<br><br>*Defendants.* | **CIVIL ACTION NO.**   3:21-cv-166<br><br><br>**NOTICE TO PLEAD AND COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1.      Plaintiff, Tanya McCartney, is an adult citizen and resident of Pennsylvania, residing therein at 703 3rd Avenue, 1st Floor, Altoona, Pennsylvania 16602.

2.      Plaintiff, Mark Montgomery III, is an adult citizen and resident of Pennsylvania, residing therein at 703 3rd Avenue, 1st Floor, Altoona, Pennsylvania 16602.

3.      At all times relevant hereto, plaintiffs, Tanya McCartney and Mark Montgomery III, were the parents of Kaidon A. Montgomery, a deceased minor.

4.      Plaintiffs, Tanya McCartney and Mark Montgomery, are administrators of the Estate of Kaidon A. Montgomery. *See* Short Certificate, attached as Exhibit "A."

5.      At all times relevant hereto, Defendant, Kids2, Inc., f/k/a Kids II, Inc., was a corporation, partnership, fictitious name and/or other business entity licensed to transact business in the Commonwealth of Pennsylvania, organized under the laws of the State of Georgia with a principal place of business located at 3333 Piedmont Road, Suite 1800, Atlanta, Georgia 30305.

6.      At all times relevant hereto, Defendant, Kids2, Inc., d/b/a, t/a, a/k/a Ingenuity, was a corporation, partnership, fictitious name and/or other business entity licensed to transact business in the Commonwealth of Pennsylvania, organized under the laws of the State of Georgia with a principal place of business located at 3333 Piedmont Road, Suite 1800, Atlanta, Georgia 30305.

## VENUE AND JURISDICTION

7.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the plaintiffs are each citizens of a different state than each of the defendants and the amount in controversy exceeds $75,000.

8.      Venue is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims of this action occurred in the Western District of Pennsylvania, and because each defendant is subject to the court's personal jurisdiction with respect to this action.

## FACTS

9.      On December 30, 2019, Tanya McCartney gave birth to her child, Kaidon A. Montgomery.

10.     At all times, plaintiffs owned and possessed a product known as the "Ingenuity Automatic Bouncer" inclined sleeper device (hereinafter referred to as the "Product").

11.     At all times material hereto the Product was manufactured, marketed, sold, advertised, developed and otherwise placed into the stream of commerce by the defendants.

12.     The Product was advertised, marketed, and otherwise held out to be a product which was designed for infants to sleep in.

13.     The Product, and the class of products known as infant inclined sleepers or bouncers, are defective, dangerous, and unsafe for infants as they were designed to place an infant in an unsafe position which interferes with an infant's ability to breathe.

14.     The Defendants knew this prior to April 3, 2020, when the Plaintiff's Decedent died, before December 30, 2019, when the Plaintiff's Decedent was born, and for many years before when Plaintiff's Decedent was born.

15.     Despite the defendants' knowledge of the dangers of allowing children to sleep at an incline, they continued to manufacture, market, sell, advertise, and otherwise place into the stream of commerce the Product, as well as numerous other infant inclined sleeper products and bouncers, all of which were defective, dangerous and unsafe in their design.

16.     Inclined sleepers such as the subject product raise a child's head and upper body to an angle that is unsafe for any sleep.

17.     In 1992, the American Academy of Pediatrics ("AAP") recommended in its "Back to Sleep" campaign that children sleep only on their backs.

18.     Those guidelines were updated in 2005 when the AAP issued a policy statement called "The Changing Concept of Sudden Infant Death Syndrome: Diagnostic Coding Shifts, Controversies Regarding the Sleeping Environment and New Variables in Reducing Risk."

19.     This guideline stated that "infants should be placed for sleep in a supine position, wholly on their back for every sleep."

20.     Further, the guidelines stated: "use a firm sleep surface: Soft materials or objects should not be placed under a sleeping infant.  A firm crib mattress covered by a sheet is the recommended sleeping surface."

21.     These guidelines were adopted by the National Institute of Health.

22.     The defendants knew of these guidelines before developing, designing, manufacturing, or selling the Product, or any other infant inclined sleeping product.

23.     In 2014, while in an Ingenuity Moonlight Rocking Sleeper, an infant's mother noticed that the sleeper placed the child in a chin-to-chest position while in the product.

24.     The parent noted that "the sleeper lacks any kind of firm support to keep the baby in a safe, semi-reclined position."

25.     This concerned parent expressed her concern that "infants this young can asphyxiate in this position (as has been seen in some baby carriers.)."

26.     This parent stated: "I'm concerned that this product presents an asphyxiation hazard and therefore, is not safe for newborns."

27.     The parent submitted a review on the Ingenuity website expressing these concerns.

28.     In response, the defendants sent an email stating that they would not publish the review on the website unless the parent removed the safety concern from the review.

29.     In addition, the defendants suggested that the parent contact the defendants' legal team.

30.     The above complaint from this parent expressly notified the defendants of the dangers of the very defects which the Product posed to infants – the inclined angle, and soft backing can cause asphyxiation which were the very reasons which the AAP and NIH recommendations on safe sleep had been instituted.

31.     By censoring their product reviews to remove complaints of asphyxiation hazards, the defendants withheld critical and lifesaving information from consumers, including plaintiffs.

32.     Withholding this information deprived consumers of the ability to understand the risks which products posed.

33.     This is particularly true as it relates to the subject product given that the warnings on the product, its labels, manuals and brochures were completely misleading and inadequate themselves.

34.     In 2016, the AAP issued again a policy statement titled "SIDS and Other Sleep Related Infant Deaths: Updated 2016 Recommendations for a Safe Infant Sleep Environment".

35.     These guidelines reaffirmed the prior guidelines set forth above.

36.     They recommended as a safe sleep environment "supine position, the use of a firm sleep surface" as well as "the avoidance of soft bedding."

37.     These guidelines admonished manufacturers such as defendants to "follow safe sleep guidelines in their messaging and advertising" and to "avoid the use of commercial devices that are inconsistent with safe sleep recommendations."

38.     At all times, the defendants knew that infants, such as Plaintiff's Decedent, should be placed for sleep in a supine position wholly on their back for every sleep.

39.     At all times, defendants knew that elevating the head of the infant's crib is ineffective in reducing gastroesophageal reflux and is not recommended; in addition, elevating the head may result in the infant sliding to the foot of the crib into a position that may comprise respiration.

40.     At all times, the defendants knew that the best evidence suggests that infants should continue to be placed supine until 1 year of age because rolling into soft bedding is an important risk factor for Sudden Unexpected Infant Death after 3 months of age.

41.     At all times, defendants knew that infants should be placed on a firm sleep surface (safety approved mattress in a safety approved crib) covered by a fitted sheet with no other bedding or soft objects to reduce the risk of SIDS and suffocation.

42.     At all times, defendants knew that sitting devices such as car seats, strollers, swings, infant carriers and infant slings are not recommended for sleep in the hospital or at home, particularly for young infants.

43.     At all times, defendants knew that, if an infant falls asleep in a sitting device, he or she should be removed from the product and moved to a crib or other appropriate flat surface as soon as is safe and practical.

44.     At all times, defendants knew that media and manufacturers should follow safe sleep guidelines in their messaging and advertising and that media and advertising messages contrary to safe sleep recommendations may create misinformation about safe sleep practices.

45.     The Product, and all products known as infant inclined sleepers or bouncers, violated the AAP guidelines regarding safe sleep for infants and babies.

46.     The Product does not have a firm surface. Instead, the Product has a soft backing surrounded by excess and unsafe material.

47.     The Product is not flat. Instead, the Product is inclined.

48.     The Product places children, such as Plaintiff's Decedent, in a position where the child's chin falls towards their chest.

49.     The Product otherwise creates an asphyxiation/suffocation hazard, including by the fact that the Product's incline, angle, and design prevents the child from rolling back onto the child's back in the event that the child rolls onto its stomach in the Product.

50.     The Product otherwise creates an asphyxiation/suffocation hazard, including by the fact that the product's incline, angle, and design prevents a child from turning its head back to a centered position facing forward in the event that the child's head turns or falls to one side or the other in the Product.

51.     The Product causes and increases the risk of harm for SIDS, SUID, positional asphyxiation, and suffocation as a result of its dangerous and defective design.

52.     The Plaintiff's Decedent, Kaidon Montgomery, was the child of plaintiffs, Tanya McCartney and Mark Montgomery III.

53.     On April 3, 2020, plaintiffs were residing at their residence located at 104 Howard Avenue, Altoona, Pennsylvania, 16601, along with their son Kaidon Montgomery.

54.     The morning of April 3, 2020, plaintiffs woke up to feed their child, Kaidon Montgomery. During this time, Kaidon was smiling and laughing.

55.     After feeding him, plaintiffs placed Kaidon in the Product.

56.      The morning of April 3, 2020, Kaidon was placed in the Product, Kaidon was discovered unresponsive by plaintiffs. At this time, Kaidon was limp, and his head was turned to one side in the Product.

57.     Upon discovering her son, Kaidon, non-responsive, Tanya McCartney contacted 911 and the 911 operator/dispatcher instructed her to start CPR, which she did.

58.     Tanya McCartney attempted CPR on her son Kaidon until EMS responded to the plaintiffs' apartment.

59.     Upon arrival, EMS was unable to find a pulse and Kaidon Montgomery was declared deceased.

60.     As described throughout this Complaint, the defendants recklessly and consciously disregarded the safety, health, and lives of babies in their decisions with respect to the design and distribution of the Product.

61.     Defendants recklessly and consciously disregarded the safety, health, and lives of babies in their decisions with respect to the design and distribution of the Product despite knowing and appreciating the risk of harm, including death to babies and infants, that resulted from their decisions and disregard as pled throughout this Complaint.

62.     The Plaintiff's Decedent died as a result of the negligence, carelessness, wanton, and reckless conduct of the Defendants and the sale and distribution of the defective and dangerous Product which was not safe for its intended and foreseeable use.

63.     As a direct and proximate result and cause of the defective and unreasonably dangerous Product, and the defendants' negligence, carelessness, recklessness, breach of warranties, and willful and wanton conduct, Plaintiff's Decedent asphyxiated and died.

64.     As a direct and proximate result and cause of the defective and unreasonably dangerous Product, and the defendants' negligence, carelessness, recklessness, breach of warranties, and willful and wanton conduct, plaintiffs and Plaintiff's Decedent suffered catastrophic and permanent injuries and damages, including:

a.  Death;

b.  Sudden Infant Death Syndrome ("SIDS");

c.  Asphyxia;

d.  Suffocation;

e.  Hypoxia;

f.  Anoxia;

g.  Alveolar hemorrhage;

h.  Past and future physical pain and suffering;

i.  Past and future psychological pain and suffering;

j.  Mental anguish;

k.  Embarrassment;

l.  Humiliation;

m.  Future lost wages;

n.  Future lost earning capacity;

o.  Emotional distress;

p.  All damages allowable under the Wrongful Death Act;

q.  All damages allowable under the Survival Act; and

r.  Punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Kids2, Inc., f/k/a Kids II, Inc. and Kids2, Inc., d/b/a, a/k/a, t/a Ingenuity, jointly and severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, delay damages, costs and such other further relief the Court shall deem appropriate.

**COUNT I**
**PLAINTIFFS V. KIDS2, INC., F/K/A KIDS II, INC., AND**
**KIDS2, INC., D/B/A, A/K/A, T/A INGENUITY**
**STRICT LIABILITY**

65.    Plaintiffs incorporate by reference the preceding paragraphs as if the same were set forth fully herein.

66.     At all times relevant hereto, defendants were each engaged in the business of the design, manufacture, and sale of the Product, and designed, manufactured, and sold the Product that plaintiffs' son, Kaidon Montgomery, was placed in and died in.

67.     The Product was unreasonably dangerous and defective at the time it was designed, manufactured, and sold by the defendants and at the time of Kaidon Montgomery's death, for all the reasons as described throughout this Complaint and in one or more of the following ways:

   a.     The Product was designed in a dangerous manner with a dangerous angle, incline, makeup, and shape, that made it capable of causing infants who were placed in the Product to asphyxiate and/or suffocate;

   b.     The Product was designed in a dangerous manner with a dangerous angle, incline, makeup, and shape, that made it capable of causing infants who were placed in the Product to die;

   c.     The Product was designed in a dangerous manner with a dangerous angle, incline, makeup, and shape, that made it capable of causing infants who were placed in the Product to suffer serious injuries, including brain damage;

   d.     The Product was designed in a dangerous manner with a dangerous angle, incline, makeup, and shape, that made it capable of causing an infant's airway to be obstructed or blocked;

   e.     Designing and/or manufacturing and/or selling and/or assembling a defective Product at an incline that causes an infant's airway to be obstructed or blocked;

   f.     Designing and/or manufacturing and/or selling and/or assembling a defective Product with a defective shape and design that causes an infant in the device to assume positions that lead to suffocation, asphyxiation, and/or death of the infant;

   g.     Designing and/or manufacturing and/or selling and/or assembling a defective Product with an inadequate and/or unsafe restraint system that causes an infant in the device to suffocate and/or asphyxiate;

   h.     Designing and/or manufacturing and/or selling and/or assembling a defective Product capable of causing infants who were placed in the Product to suffer from injuries, deformities, and disfigurement, including plagiocephaly, brachycephaly, torticollis, brain damage, developmental delays, and cognitive delays;

i.      Designing and/or manufacturing and/or selling and/or assembling a defective Product that contains parts and materials that cause an infant in the device to suffocate, asphyxiate, suffer injury, and/or die;

j.      Designing and/or manufacturing and/or selling and/or assembling a defective Product with inadequate and/or defective safety devices and measures;

k.      Designing and/or manufacturing and/or selling and/or assembling a defective Product to be used for infants to sleep in despite the fact that the defective and dangerous design, shape, and makeup of the device causes infants sleeping in it to suffocate, asphyxiate, sustain injury, and/or die;

l.      Designing and/or manufacturing and/or selling and/or assembling a defective Product to be used for infants to sleep in overnight or all night despite the fact that the defective and dangerous design, shape, and makeup of the device causes infants sleeping in it overnight or all night to suffocate, asphyxiate, sustain injury, and/or die;

m.      Failing to warn that the Product should not be used for infants to sleep in;

n.      Failing to warn that the Product should not be used for infants to sleep in overnight or all night long;

o.      Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer asphyxiation;

p.      Designing and/or manufacturing and/or selling and/or assembling a defective Product with a defective shape and design that utilizes fabric, cloth, and/or material that is unreasonably dangerous and/or unsafe, in that the fabric, cloth, and/or material causes infants to suffocate or asphyxiate and/or fails to provide an infant the ability to adequately breathe when the infant's face comes into contact with the cloth, fabric, and/or material;

q.      Misrepresenting to the public, customers, and owners of the Product, that the Product was safe for infants to lie in and sleep in;

r.      Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer suffocation;

s.      Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer SIDS;

t.     Failing to perform adequate and proper testing and risk-hazard analysis on the Product in order to ensure it was safe for use before selling it;

u.     Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer death;

v.     Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer injuries;

w.    Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer deformity and/or disfigurement, including plagiocephaly, brachycephaly, and/or torticollis;

x.     Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer brain damage and/or brain injury;

y.     Failing to timely recall the Product;

z.     Failing to warn that the defendants knew that the Product was associated with numerous injuries and death suffered by numerous infants;

aa.    Failing to seek appropriate and adequate guidance, advice, and input from all applicable professionals, including medical doctors, engineers, and medical professionals, in the Defendants' pre-sale design and marketing of the Product in order to ensure the design, makeup, shape, and/or angle of the Product was safe and not defective prior to marketing and selling it;

bb.    Failing to issue post-sale warnings regarding the dangers and safety hazards associated with the Product; and

cc.    Failing to issue adequate post-sale warnings regarding the dangers and safety hazards associated with the Product.

68.    The Product was expected to, and did, reach the plaintiffs without substantial relevant change in the condition in which it was sold by Defendants.

69.    The defects and conditions attendant in the Product as described throughout this Complaint made the Product unreasonably dangerous for the use to which the Product would ordinarily be put.

70.     The unreasonably dangerous conditions of the Product in which Kaidon Montgomery was placed and died in, existed when the Product in which Kaidon Montgomery was placed and died in left the Defendants' hands.

71.     Inclined sleeping devices and bouncers, including the specific Product in which Kaidon Montgomery was placed and died in, were at all times defective in assembly, manufacture, unreasonably dangerous in design, and unaccompanied by adequate warnings concerning the Product's hazardous properties for all the reasons as alleged throughout the entirety of this Complaint.

72.     Defendants knew or should have known of the defects described in the Complaint and/or that the Product was unreasonably dangerous and/or that the Product included inadequate warnings. Nonetheless, the Defendants acted unreasonably, recklessly, and with a conscious disregard of the rights of others, by failing to take steps to protect users like Plaintiffs and Plaintiffs' son, Kaidon Montgomery.

73.     The injuries and damages suffered by the Plaintiffs and suffered by Plaintiffs' Decedent, Kaidon Montgomery, were caused by the defective and unreasonably dangerous Product.

74.     At the time the Product in which Kaidon Montgomery was placed and died in left the Defendants' possession and control, it was in a defective condition.

75.     At the time the Product in which Kaidon Montgomery was placed and died in left the Defendants' possession and control, it was defective because it did not meet the reasonable expectations of an ordinary consumer.

76.     At the time the Product in which Kaidon Montgomery was placed and died in left the Defendants' possession and control, it was defective because the risk posed by its design and manufacture exceeded the utility, if any, of its design.

77.     A device designed for infants to be placed in would not ordinarily cause an infant placed in it to suffocate, asphyxiate, suffer brain damage, suffer deformities, or die, unless it was defectively designed.

78.      A device designed for infants to sleep in would not ordinarily cause an infant placed in it to suffocate, asphyxiate, suffer brain damage, suffer deformities, or die, unless it was defectively designed.

79.     As a direct and proximate result of the defective condition and unreasonably dangerous nature of the Product as described throughout the entirety of this Complaint, Plaintiffs have sustained significant damages and injuries as alleged in this Complaint, and will continue to sustain significant damages and injuries.

80.     As a direct and proximate result of the defective condition and unreasonably dangerous nature of the Product as described throughout the entirety of this Complaint, Plaintiffs' Decedent, Kaidon Montgomery, sustained numerous significant damages and injuries as alleged throughout this Complaint, including death, asphyxiation, suffocation, SIDS, physical pain and suffering, psychological pain and suffering, future lost wages, and future loss of earning capacity.

81.     The Defendants knew of problems of this nature concerning the Product's design's capability of causing significant injuries and deaths to infants and acted in conscious disregard of these known risks to public safety and to the safety of infants placed in Products for years, and the Defendants' conduct was wanton, willful, and reckless for these reasons and all the reasons as alleged throughout the Complaint, warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Kids2, Inc., f/k/a Kids II, Inc. and Kids2, Inc., d/b/a, a/k/a, t/a Ingenuity, jointly and severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, delay damages, costs and such other further relief the Court shall deem appropriate.

### COUNT II
### PLAINTIFFS V. KIDS2, INC., F/K/A KIDSII, INC., AND KIDS2, INC., D/B/A, A/K/A, T/A INGENUITY
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

82.    Plaintiffs incorporate by reference the preceding paragraphs as if the same were set forth fully herein.

83.    Defendants breached their duty to Plaintiffs and to Plaintiffs' son, Kaidon Montgomery, to guarantee that the Product was fit for its ordinary uses, including as a device for infants to be placed in, as a device for infants to sleep in, and as a device for infants to sleep overnight and/or all night in.

84.    The Product was not fit for infant placement due to its unsafe incline, angle, makeup, padding, and shape.

85.    The Product was not fit for infant sleep due to its unsafe incline, angle, makeup, padding, and shape.

86.    Defendants further breached their duty to Plaintiffs and to Plaintiffs' son, Kaidon Montgomery, to guarantee that the Product would not cause infants placed in it to suffer suffocation, asphyxiation, injury, or death.

87.    As a direct and proximate result of Defendants' breach of warranty, Plaintiffs' son, Kaidon Montgomery, suffered from significant physical pain and suffering, disfigurement, mental anguish, future lost wages, future lost earning capacity, psychological pain and suffering, death, and other associated injuries and damages as set forth throughout this Complaint.

15

88.     As a direct and proximate result of Defendants' breach of warranty, Plaintiffs incurred significant physical pain and suffering, emotional distress, mental anguish, psychological pain and suffering, and other associated injuries and damages as set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Kids2, Inc., f/k/a Kids II, Inc. and Kids2, Inc., d/b/a, a/k/a, t/a Ingenuity, jointly and severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, delay damages, costs and such other further relief the Court shall deem appropriate.

**COUNT III**
**PLAINTIFFS V. KIDS2, INC., F/K/A KIDSII, INC., AND**
**KIDS2, INC., D/B/A, A/K/A, T/A INGENUITY**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

89.     Plaintiffs incorporate by reference the preceding paragraphs as if the same were set forth fully herein.

90.     Defendants breached their duty to Plaintiffs and to Plaintiffs' son, Kaidon Montgomery, to guarantee that the Product was fit for its intended purposes, including as a device for infants to be placed in, as a device for infants to sleep in, and as a device for infants to sleep overnight and/or all night in.

91.     The Product was not fit for its intended purposes, including infant placement and infant sleep, due to its dangerous and defective design, unsafe incline, unsafe angle, makeup, padding, and shape.

92.     The Product was not fit for its intend purposes of infant sleep due to its unsafe incline, angle, makeup, padding, and shape.

93.     Defendants further breached their duty to Plaintiffs and to Plaintiffs' son, Kaidon Montgomery, to guarantee that the Product would not cause infants placed in it to suffer suffocation, asphyxiation, injury, or death.

94.     As a direct and proximate result of Defendants' breach of warranty, Plaintiffs' son, Kaidon Montgomery, suffered from significant physical pain and suffering, disfigurement, mental anguish, future lost wages, future lost earning capacity, psychological pain and suffering, death, and other associated injuries and damages as set forth above.

95.     As a direct and proximate result of Defendants' breach of warranty, Plaintiffs incurred significant emotional distress, mental anguish, psychological pain and suffering, and other associated injuries and damages as set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Kids2, Inc., f/k/a Kids II, Inc. and Kids2, Inc., d/b/a, a/k/a, t/a Ingenuity, jointly and severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, delay damages, costs and such other further relief the Court shall deem appropriate.

**COUNT IV**
**PLAINTIFFS V. KIDS2, INC., F/K/A KIDSII, INC., AND**
**KIDS2, INC., D/B/A, A/K/A, T/A INGENUITY**
**BREACH OF EXPRESS WARRANTY**

96.     Plaintiffs incorporate by reference the preceding paragraphs as if the same were set forth fully herein.

97.     The Defendants marketed, sold, and advertised the Product device as a "sleeper."

98.     The Defendants' labeling and advertising of the Product stated that it was safe for unsupervised infant use and sleep.

99.     The Defendants sold the Product with the express warranty that it was safe for infant sleep, safe for infant use, safe for unsupervised use, and free from defects.

100.    At the time of the sale of each Product, the Defendants knew, or should have known, or were reckless in consciously disregarding the rights and safety of others, of the Product's defective nature and unsafe environment for infant use and infant sleep. Despite this, the

Defendants never provided any warning regarding the safety hazards or dangers that the Product device posed to infants, and the Defendants continued to manufacture, sell, design, assemble, market, and advertise the Product device.

101.    As a direct and proximate result of the Defendants' express breach of warranty, numerous infants have been injured and killed, including Plaintiffs' son, Kaidon Montgomery.

102.    The Plaintiffs obtained and used the falsely labeled Product device and they would not have obtained or used the Product device had they known that the Product device was in fact not safe for use, not safe for prolonged use, not safe for sleep, and not safe for overnight or all night sleep.

103.    As a direct and proximate result of Defendants' breach of warranty, Plaintiffs' son, Kaidon Montgomery, suffered from significant physical pain and suffering, disfigurement, mental anguish, future lost wages, future lost earning capacity, psychological pain and suffering, death, and other associated injuries and damages as set forth above.

104.    As a direct and proximate result of Defendants' breach of warranty, Plaintiffs incurred significant emotional distress, mental anguish, psychological pain and suffering, and other associated injuries and damages as set forth above.

105.    As a direct and proximate result of the Defendants' express breach of warranty, the Plaintiffs were induced to purchase and/or use and/or obtain a product unfit for its intended use and therefore without value.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Kids2, Inc., f/k/a Kids II, Inc. and Kids2, Inc., d/b/a, a/k/a, t/a Ingenuity, jointly and severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, delay damages, costs and such other further relief the Court shall deem appropriate.

## COUNT V
## PLAINTIFFS V. KIDS2, INC., F/K/A KIDSII, INC., AND
## KIDS2, INC., D/B/A, A/K/A, T/A INGENUITY
## <u>NEGLIGENCE</u>

106.    Plaintiffs incorporate by reference all preceding paragraphs as if the same were set forth fully herein.

107.    Defendants were negligent in one or more of the following ways:

a.    Designing and/or manufacturing and/or selling and/or assembling a defective Product capable of causing infants who were placed in the Product to asphyxiate and/or suffocate;

b.    Designing and/or manufacturing and/or selling and/or assembling a defective Product capable of causing infants who were placed in the Product to die;

c.    Designing and/or manufacturing and/or selling and/or assembling a defective Product capable of causing infants who were placed in the Product to suffer serious injuries, including brain damage;

d.    Designing and/or manufacturing and/or selling and/or assembling a defective Product at an angle that causes an infant's airway to be obstructed or blocked;

e.    Designing and/or manufacturing and/or selling and/or assembling a defective Product at an incline that causes an infant's airway to be obstructed or blocked;

f.    Designing and/or manufacturing and/or selling and/or assembling a defective Product with a defective shape and design that causes an infant in the device to assume positions that lead to suffocation, asphyxiation, and/or death of the infant;

g.    Designing and/or manufacturing and/or selling and/or assembling a defective Product with an inadequate and/or unsafe restraint system that causes an infant in the device to suffocate and/or asphyxiate;

h.    Designing and/or manufacturing and/or selling and/or assembling a defective Product with a defective shape and design that utilizes fabric, cloth, and/or material that is unreasonably dangerous and/or unsafe, in that the fabric, cloth, and/or material causes infants to suffocate or asphyxiate and/or fails to provide an infant the ability to adequately breathe when the infant's face comes into contact with the cloth, fabric, and/or material;

i. Designing and/or manufacturing and/or selling and/or assembling a defective Product capable of causing infants who were placed in the Product to suffer from injuries, deformities, and disfigurement, including plagiocephaly, brachycephaly, torticollis, brain damage, developmental delays, and cognitive delays;

j. Designing and/or manufacturing and/or selling and/or assembling a defective Product that contains parts and materials that cause an infant in the device to suffocate, asphyxiate, suffer injury, and/or die;

k. Designing and/or manufacturing and/or selling and/or assembling a defective Product with inadequate and/or defective safety devices and measures;

l. Designing and/or manufacturing and/or selling and/or assembling a defective Product to be used for infants to sleep in despite the fact that the defective and dangerous design, shape, and makeup of the device causes infants sleeping in it to suffocate, asphyxiate, sustain injury, and/or die;

m. Designing and/or manufacturing and/or selling and/or assembling a defective Product to be used for infants to sleep in overnight or all night despite the fact that the defective and dangerous design, shape, and makeup of the device causes infants sleeping in it overnight or all night to suffocate, asphyxiate, sustain injury, and/or die;

n. Failing to warn that the Product should not be used for infants to sleep in;

o. Failing to warn that the Product should not be used for infants to sleep in overnight or all night long;

p. Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer asphyxiation;

q. Misrepresenting to the public, customers, and owners of the Product, that the Product was safe for infants to lie in and sleep in;

r. Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer suffocation;

s. Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer SIDS;

t. Failing to perform adequate and proper testing and risk-hazard analysis on the Product in order to ensure it was safe for use before selling it;

u.   Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer death;

v.   Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer injuries;

w.   Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer deformity and/or disfigurement, including plagiocephaly, brachycephaly, and/or torticollis;

x.   Failing to warn that the design, makeup, shape, and/or angle of the Product can cause an infant to suffer brain damage and/or brain injury;

y.   Failing to timely recall the Product;

z.   Failure to warn that the Defendants knew that the Product was associated with numerous injuries and death suffered by numerous infants;

aa.   Failure to seek appropriate and adequate guidance, advice, and input from all applicable professionals, including medical doctors, engineers, and medical professionals, in the Defendants' pre-sale design and marketing of the Product in order to ensure the design, makeup, shape, and/or angle of the Product was safe and not defective prior to marketing and selling it;

bb.   Continuing to market and sell the Product despite being notified by numerous individuals and organizations, including parents, customers, governmental agencies, medical doctors, and medical groups or organizations, that the Product was unsafe, defective, and had caused deaths, injuries, deformities, and disfigurements to numerous infants who were placed in the Product;

cc.   Continuing to market and sell the Product despite knowing that the defective design of the Product had caused or contributed to the deaths and injuries of numerous infants;

dd.   Failing to issue post-sale warnings regarding the dangers and safety hazards associated with the Product;

ee.   Failing to issue adequate post-sale warnings regarding the dangers and safety hazards associated with the Product; and

21

ff. Continuing to market and sell the Product as a device to be used as a sleeper despite knowing that the Product was unsafe and defective as a sleeping device for infants.

108.　The defects and conditions attendant in the Product's design described throughout this Complaint made the Products, including the Product in which Kaidon Montgomery was placed in and died in, unreasonably dangerous for the use to which the Products would ordinarily be put.

109.　The unreasonably dangerous conditions of the Products, including the Product in which Kaidon Montgomery was placed and died in, as described throughout this Complaint, existed when the Products, including the specific Product in which Kaidon Montgomery was placed and died in, left the Defendants' hands.

110.　The Products, including the specific Product in which Kaidon Montgomery was placed and died in, were at all times defective in assembly, manufacture, unreasonably dangerous in design, and unaccompanied by adequate warnings concerning the Product's hazardous properties for all the reasons as alleged throughout the entirety of this Complaint.

111.　Defendants knew or should have known of the defects described in the Complaint and/or that the Product was unreasonably dangerous and/or that the Product included inadequate warnings. Nonetheless, the Defendants acted unreasonably, recklessly, and with a conscious disregard of the rights of others, by failing to take steps to protect users like Plaintiffs and Plaintiffs' son, Kaidon Montgomery

112.　Plaintiffs relied on the Defendants' misrepresentations in purchasing, acquiring, and using the Product.

113.　At the time of the sale of each Product, including the Product Plaintiffs' son, Kaidon Montgomery, used, Defendants knew or should have known that their representations about the safety of the Product were false.

114.    The Defendants' misrepresentations that the Product was safe were material to the purchasing decisions and decisions to use the Product on the part of the consuming public, including Plaintiffs.

115.    By their conduct and lack of action, the Defendants displayed a conscious indifference to the circumstances surrounding the design, manufacture, sale, assembling and ultimate use of the Product where the probability of injury to others was apparent and otherwise engaged in conduct that created a substantial risk of physical injury to Plaintiffs and Plaintiffs' son, Kaidon Montgomery, when Defendants knew, or in the exercise of reasonable care should have known, of the existence of such a risk.

116.    As a direct and proximate result of Defendants' negligence and reckless indifference, Plaintiffs' son, Kaidon Montgomery, suffered significant physical pain and suffering, disfigurement, mental anguish, future lost wages, future lost earning capacity, psychological pain and suffering, death, and other associated injuries and damages as set forth above.

117.    As a direct and proximate result of Defendants' negligence and reckless indifference, Plaintiffs incurred significant emotional distress, mental anguish, psychological pain and suffering, and other associated injuries and damages as set forth above and throughout this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Kids2, Inc., f/k/a Kids II, Inc. and Kids2, Inc., d/b/a, a/k/a, t/a Ingenuity, jointly and severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, delay damages, costs and such other further relief the Court shall deem appropriate.

COUNT VI
PLAINTIFFS V. KIDS2, INC., F/K/A KIDSII, INC., AND
KIDS2, INC., D/B/A, A/K/A, T/A INGENUITY
FRAUD

118.    Plaintiffs incorporate by reference all preceding paragraphs as if the same were set forth fully herein.

119.    As alleged throughout this Complaint, the Defendants, through their marketing materials, targeted advertising, websites, and the packaging of the Product, consistently and falsely represented to the public throughout the period they were selling the Product that the Product was safe for infant use and sleep.

120.    The Defendants made numerous representations knowing that they were false or with reckless indifference to the truth, including without limitation:

a.    Sale of the Product as a "sleeper" device, product and/or bouncer;

b.    Marketing, advertising, and labeling the Product as safe for sleep;

c.    Marketing, advertising, and labeling the Product as safe for unsupervised sleep;

d.    Marketing, advertising, and labeling the Product as safe for infants to lie in;

e.    Marketing, advertising, and labeling the Product as safe for overnight sleep;

f.    Marketing, advertising, and labeling the Product as conducive to safe sleeping;

g.    Marketing, advertising, and labeling the Product as a product that was safe from the point of birth of the child until the child is able to grasp the side of the Product and pull himself or herself upward or sit unassisted; and

h.    Marketing, advertising, and labeling the Product as a product that falls under the AAP's safe sleep recommendations.

121.    Defendants, through their marketing materials, targeted advertising, websites, and the packaging of the Product, consistently and falsely omitted material facts and information from the public, customers, purchasers, parents, and owners of the Product, throughout the period that

the Defendants were selling the Product. The Defendants made these material omissions and false statements knowing that the information presented was incomplete, untrue, and with reckless indifference to the truth. These material omissions include, but are not limited to, the Defendants' failures to inform buyers and users of the Product that:

a.   The Product was not safe for infants to lie in;

b.   The Product was not safe for infants to sleep in;

c.   The Product failed to conform to the AAP's safe sleep standards and recommendations;

d.   The Product was not safe for infants to sleep in all night long;

e.   The Product's design, including its incline and angle, was unsafe for children;

f.   The Product's design, including its incline and angle, could cause an infant to suffocate, asphyxiate, and/or die;

g.   The Product's design, including its incline and angle, could cause an infant to suffer deformities or disfigurement including plagiocephaly, brachycephaly, and/or torticollis;

h.   The Product's design, including its incline and angle, could cause an infant to suffer hypoxic and/or anoxic brain damage; and

i.   The Product had been linked to numerous infants' injuries and deaths.

122.   The Defendants made these false statements and material omissions intending that the consuming public and users of the Product would rely on them in purchasing or using the Product.

123.   These false statements and material omissions were made uniformly to the consuming public, parents, owners of the Product, and prospective customers. These individuals, including the Plaintiffs, relied on the Defendants' misrepresentations and material omissions

regarding the Product and would not have purchased, obtained, or used a Product had the Defendants not represented that the Product was a safe product for infants to use.

124.    As a direct and proximate result of the Defendants' material misrepresentations and material omissions regarding the Product, hundreds of infants have been injured and killed, including Plaintiffs' son, Kaidon Montgomery.

125.    As a direct and proximate result of Defendants' fraud, Plaintiffs' son, Kaidon Montgomery, suffered from significant physical pain and suffering, disfigurement, mental anguish, future lost wages, future lost earning capacity, psychological pain and suffering, death, and other associated injuries and damages as set forth above.

126.    As a direct and proximate result of Defendants' fraud, Plaintiffs incurred significant emotional distress, mental anguish, psychological pain and suffering, and other associated injuries and damages as set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Kids2, Inc., f/k/a Kids II, Inc. and Kids2, Inc., d/b/a, a/k/a, t/a Ingenuity, jointly and severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, delay damages, costs and such other further relief the Court shall deem appropriate.

### COUNT VII
### PLAINTIFFS V. KIDS2, INC., F/K/A KIDSII, INC., AND KIDS2, INC., D/B/A, A/K/A, T/A INGENUITY
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

127.    At all times material hereto, Plaintiff, Tanya McCartney, was the mother of Plaintiffs' Decedent, Kaidon Montgomery, a deceased minor.

128.    At all times material hereto, Plaintiff, Mark Montgomery III, was the father of Plaintiffs' Decedent, Kaidon Montgomery, a deceased minor.

129.     On April 3, 2020, Plaintiffs witnessed the traumatic event of personally observing their son, Kaidon Montgomery, dead, unresponsive, not breathing, limp, pulseless, blue, and lifeless as a result of his placement in the negligently and defectively designed Product.

130.     Plaintiffs were forced to see and hold the dead body of their son, Kaidon Montgomery, as a result of Kaidon Motgomery's placement in the negligently and defectively designed Product.

131.     As a result of personally witnessing and observing their son, Kaidon Montgomery, dead, unresponsive, not breathing, limp, pulseless, and blue, as a result of his placement in the negligently and defectively designed Product, Plaintiffs experienced severe emotional distress and pain and suffering.

132.     Plaintiffs were present for and personally observed the Product, in its negligently designed, defective, and unreasonably dangerous condition, for numerous days leading up to and including the day Plaintiffs' son Kaidon Montgomery died in the Product.

133.     Plaintiffs were located at the scene of the negligently and recklessly inflicted injury and death to their son, Kaidon Montgomery, and were forced to personally and contemporaneously observe the traumatic and horrific result of the negligently and recklessly inflicted injury and death to their son Kaidon Montgomery, when they witnessed Kaidon Montgomery dead, unresponsive, not breathing, limp, pulseless, and blue, as a result of his placement in the negligently and defectively designed Product.

134.     Plaintiffs each experienced shock, outrage, severe emotional and psychological distress and damage, sadness, fright, fear, anxiety, and panic, in seeing their son, Kaidon Montgomery, dead, unresponsive, not breathing, limp, pulseless, and blue, as a result of his

placement in the negligently and defectively designed Product, and Plaintiffs' observation of Kaidon Montgomery's condition was contemporaneous.

135.    The negligence and recklessness of the Defendants with respect to their design, manufacture, sale, distribution, marketing, and advertising of their inclined sleeper and/or bouncer products, including the Product (and specifically the Product in which Plaintiffs' Decedent, Kaidon Montgomery, died) was continuing, and said negligence occurred in the presence of Kaidon Montgomery's parents, Plaintiffs, including on the day that Plaintiffs were forced to personally observe their son Kaidon Montgomery dead, unresponsive, not breathing, limp, pulseless, and blue, as a direct and proximate result of the negligent, reckless, and careless conduct of the Defendants as alleged throughout this Complaint.

136.    As a direct and proximate result of the negligence and recklessness of the Defendants and their agents and/or employees as specifically described and/or identified herein and Plaintiffs' contemporary observation of the Defendants' negligent and reckless acts and/or omissions and Plaintiffs' Decedent's resulting fatal injuries, Plaintiffs each suffered severe emotional distress, as well as physical injury and physical manifestations from the emotional distress, some or all of which may be permanent in nature.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Kids2, Inc., f/k/a Kids II, Inc. and Kids2, Inc., d/b/a, a/k/a, t/a Ingenuity, jointly and severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, delay damages, costs and such other further relief the Court shall deem appropriate.

## FIRST CAUSE OF ACTION
## WRONGFUL DEATH
### PLAINTIFFS V. KIDS2, INC., F/K/A KIDSII, INC., AND
### KIDS2, INC., D/B/A, A/K/A, T/A INGENUITY

137.    Plaintiffs incorporate by reference the preceding paragraphs as though each were set forth herein at length.

138.    Plaintiffs bring this action pursuant to the Wrongful Death Act 42 Pa. C.S.A. Section 801 and claims all damages recoverable under the Pennsylvania Wrongful Death Act.

139.    The names and last known addresses of all persons who may be entitled by law to recover damages, as well as their relations to decedent Kaidon A. Montgomery are as follows:

    a.  Tanya McCartney, Mother
        703 3rd Avenue, 1st Floor,
        Altoona, Pennsylvania 16602

    b.  Mark Montgomery, III, Father
        703 3rd Avenue, 1st Floor,
        Altoona, Pennsylvania 16602

140.    As a direct and proximate result of the foregoing, the Decedent's Wrongful Death beneficiaries have been, continue to be, and will in the future be deprived of his counsel, services, companionship and society.

141.    As a direct and proximate result of the Defendants' negligence, recklessness, strict liability, breach of warranties, fraud, and carelessness as set forth above, which is incorporated herein, Kaidon Montgomery's Wrongful Death beneficiaries suffered, are suffering, and will, for an indefinite period of time in the future suffer damages, injuries and losses including but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received from him, including monies which he would have provided for items such as clothing, food, shelter, medical care, education and entertainment, recreation and gifts.

142.    As a direct and proximate result of the Defendants' negligence and carelessness as set forth above, which is incorporated herein, Kaidon Montgomery's Wrongful Death beneficiaries have been caused to incur and pay various expenses for medical treatment, hospital care, custodial care, nursing care and medications, and funeral and other expenses related to his death.

143.    Plaintiffs demand all damages recoverable under the Wrongful Death Act for the death of their son, Kaidon Montgomery.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Kids2, Inc., f/k/a Kids II, Inc. and Kids2, Inc., d/b/a, a/k/a, t/a Ingenuity, jointly and severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, delay damages, costs and such other further relief the Court shall deem appropriate.

**SECOND CAUSE OF ACTION**
**SURVIVAL ACTION**
**PLAINTIFFS V. KIDS2, INC., F/K/A KIDSII, INC., AND**
**KIDS2, INC., D/B/A, A/K/A, T/A INGENUITY**

144.    Plaintiffs incorporate by reference the preceding paragraphs as though each were set forth herein at length.

145.    Plaintiffs brings this action on behalf of the Estate of Kaidon Montgomery, deceased, by virtue of the Survival Act, 42 Pa. C.S.A. § 8302, and claim all benefits of the Survival Act on behalf of Kaidon Montgomery's Estate and other persons entitled to recover under law.

146.    As a direct and proximate result of the Defendants' negligence, recklessness, strict liability, breach of warranties, fraud, and carelessness as set forth above, which is incorporated herein, Plaintiffs claim on behalf of the Estate of Kaidon Montgomery all damages suffered by the Estate by reason of the death of Kaidon Montgomery including without limit the generality of the following:  the severe injuries to Kaidon Montgomery which resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses

which Kaidon Montgomery suffered prior to his death; the loss of past, present and future earning capacity suffered by Kaidon Montgomery from the date of his death until the time in the future he would have lived had he not died as a result of the injuries he sustained; expenses for medical care; the loss and total imitation and deprivation of his normal activities, enjoyment of life, pursuits and life's pleasures from the date of his death until such time in the future as he would have lived had he not died as a result of the injuries sustained.

147.    Plaintiffs demand all damages recoverable under the Survival Act for the death of their son, Kaidon Montgomery.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Kids2, Inc., f/k/a Kids II, Inc. and Kids2, Inc., d/b/a, a/k/a, t/a Ingenuity, jointly and severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages, punitive damages, delay damages, costs and such other further relief the Court shall deem appropriate.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By: _____
     SHANIN SPECTER, ESQUIRE
     THOMAS E. BOSWORTH, ESQUIRE
     Attorney ID Nos. 40928 / 323350
     1525 Locust Street
     Philadelphia, PA  19102
     (215) 772-1000

*Attorneys for Plaintiffs*