**KLINE & SPECTER, P.C.**                    *Attorneys for Plaintiff*
By:     SHANIN SPECTER, ESQUIRE
         THOMAS E. BOSWORTH, ESQUIRE
Attorney I.D. No. 40928 / 323350
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
215-772-1000
215-735-0937 (facsimile)

| | |
|---|---|
| **TANYA MCCARTNEY** and **MARK MONTGOMERY**, Individually and as Administrators of the **ESTATE OF KAIDON MONTGOMERY**,<br><br>*Plaintiffs*<br><br>v.<br><br>**KIDS 2, INC. f/k/a KIDS II, INC.;** and **KIDS 2, INC. d/b/a, t/a, a/k/a INGENUITY**,<br><br>*Defendants.* | **CIVIL ACTION**<br><br>**NO.  3:21–cv–166** |

## MOTION TO COMPEL CORPORATE DESIGNEE DEPOSITION

Plaintiffs, by and through their undersigned counsel, Kline & Specter, P.C., file the instant Motion to Compel Corporate Designee Deposition, and in support thereof aver as follows:

## I.     Factual and Procedural Background

1.     This is a products liability, negligence, and breach of warranties case arising out of the tragic and preventable death of plaintiffs' infant son, K.M.

2.     K.M. suffocated to death in one of defendants' defectively designed inclined sleeper/bouncer products at his parents' home in Altoona.

3.     He was three (3) months old when he died.

4.      K.M. died because the defendants have knowingly and recklessly kept a product on the market for years, which is designed for inclined sleep and therefore poses a risk of suffocation and death to infants.

5.      Defendants have kept this product on the market despite knowing of this potential risk prior to K.M.'s death.

6.      For years, the American Academy of Pediatrics ("AAP") has recommended that infants always sleep flat on their backs (*i.e.* not on any angle).[1] Defendants have known this. The reason is simple: It is very dangerous for infants—who lack adequate muscle control of their necks—to sleep at any sort of incline. If an infant sleeps at an incline, then the infant's head can fall forward during sleep, thereby closing off their airway. Because infants inherently lack adequate muscle control of their necks, if their airways are cut off but they cannot lift their heads up to re-open their airway, then they suffocate and die.

7.      In addition to this hazard, sleeping at an incline in a product, such as the one in this case, is dangerous because the infant can roll onto their side, be unable to roll back, and therefore suffocate on the padding and fabric situated on the sides of the product.

8.      These hazards related to infants sleeping at inclines are not fanciful made-up concoctions of some lawsuit. Rather, these are well-established facts known to the defendants and well-established in the medical community.

9.      In fact, on April 26, 2019, defendants recalled "all models of Kids II Rocking Sleepers". *See* "Kids II Recalls All Rocking Sleepers Due to Reports of Death," U.S. CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2019/Kids-II-Recalls-All-Rocking-Sleepers-Due-to-Reports-of-Deaths (last accessed August 16, 2022).

---

[1] This information is readily available through a Google search. Of course, plaintiffs are happy to provide the Court with documentation to support the same should the Court so desire.

10.     The hazard identified (*i.e.* the reason for this recall) was "infant fatalities." *Id.*

11.     The product line that defendants recalled looks like this:



*See id.* (depicting this photograph).

12.     The product at issue in this case that minor-plaintiff suffocated and died in looks like this:



*See, e.g.*, Ingenuity Soothing Baby Bouncer with Vibrating Infant Sleep, AMAZON.COM, https://www.amazon.com/Ingenuity-Cradling-Bouncer-Vibration-Melodies/dp/B0812JM3WL/ref=asc_df_B0812JM3WL/?tag=&linkCode=df0&hvadid=424638704385&hvpos=&hvnetw=g&hvrand=1451157605258048231&hvpone=&hvptwo=&hvqmt=&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=9060373&hvtargid=pla-867011993242&ref=&adgrpid=102910452670&th=1 (last visited August 16, 2022).

13.     The above two products are nearly identical.

14.     Obviously, both of the defendants' two above-depicted products pose the same exact risk of suffocation and death to infants if infants sleep in them. Both products sit at an angle and, thus, the infant cannot sleep flat on their back when in either product.

15.     Despite the AAP's recommendation that infants always sleep flat on their backs and not at an angle, the defendants marketed the above products as devices infants could and should sleep in. While the inclined sleeper products do a great job at putting and soothing a baby to sleep, they are not safe. They are deadly.

16.     In a frantic yet creative campaign of semantics, though, the defendants have attempted to distinguish the above two product lines.

17.     Specifically, the defendants (or, I should say, their lawyers) refer to the first-depicted product above as an "infant inclined sleep product."

18.     The defendants refer to the second-depicted product (which minor-plaintiff suffocated and died in) as a "bouncer."

19.     According to defendants' twisted logic, nothing about their "infant inclined sleep product" is relevant to this case because this case involves a "bouncer." Defendants boldly set forth this argument **despite the fact that defendants market and sell the "bouncer" product as**

4

**something babies can sleep in.** The inclined product minor-plaintiff suffocated and died in contains a hidden warning label that indicated infants could sleep in the product, but not for "prolonged" periods of time.[2]

20.     To this day, defendants have refused to recall their inclined "bouncer" products from the market. This is part of plaintiffs' negligence claim; plaintiffs allege it was negligent and reckless for defendants to not recall them.

21.     When the defendants recalled certain models of their infant inclined sleeper products in April 2019, they cited five (5) infant fatalities associated with these products. *See* "Infant Deaths in Inclined Sleepers: Fisher-Price's Rock 'n Play Reveals Dangerous Flaws in U.S. Product Safety," U.S. HOUSE OF REPRESENTATIVES STAFF REPORT at 31 (June 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Inclined%20Sleeper%20Report.pdf.

22.     According to a Congressional report on the dangers of inclined sleep products, "**Kids II did not produce any documents to the Committee indicating that it had conducted original research into the safety of inclined sleep for infants.**" *Id.* (emphasis added).[3]

23.     Currently, there is another wrongful death case pending against defendants in the Philadelphia County Court of Common Pleas involving the death of an infant in one of defendants' inclined sleep products. *See Bogdan v. Kids 2 Inc. et al.*, Case ID# 191002330 (Phila. Com. Pl. filed Oct. 22, 2019).

---

[2] The Court should wonder: "Why would the defendants include a warning that says the infant should not sleep for 'prolonged' periods of time in the inclined bouncer unless the defendants had some knowledge and awareness that infant sleep in the product was unsafe?"

[3] Note that this Congressional Committee's staff report was critical of defendants for not conducting any research into the safety of "inclined sleep for infants" in general. Their focus was not on some semantic difference between an "inclined sleeper" and a "bouncer" but, rather, the danger of inclined sleep for infants in general.

24.     The lawyers representing defendants in the Philadelphia *Bogdan* case are also representing the defendants in this case.

25.     The lawyers in this case have refused to produce all the documents that they already produced to the plaintiff in the Philadelphia *Bogdan* case. Defendants' basis for refusing to do this rests upon their distinction between an "inclined sleeper" and a "bouncer" despite the fact that: (1) both products were made and manufactured by the defendants; (2) defendants sold and marketed both products as devices infants could and should sleep in; and (3) both products sit at an incline and thus carry the same hazard risks to infants sleeping in either product.

26.     Notably, the documents produced so far by defendants in discovery refer only to one infant death, whereas the above-cited Congressional report references at least five (5) infant deaths in defendants' inclined sleep products that defendants knew about well before the 2019 recall.

27.     Plaintiffs' previous document requests asked for all documents produced to other plaintiffs in any lawsuit arising out of death or injury to a child in one of defendants' inclined sleeper or bouncer products that were marketed and sold as devices that infants could sleep in.

28.     The discovery deadline in this case is currently August 1, 2020. (ECF Doc. 24 ¶ 5).

29.     There is a Post-Discovery Status Conference scheduled for September 1, 2020. (*Id.* ¶ 8).

30.     Following receipt of defendants' production of documents, on July 12, 2022, plaintiffs emailed defense counsel a Notice of Videotaped Deposition for a corporate designee deposition to occur on July 27, 2022.

31.     Defense counsel did not respond to this email or indicate any issue with the proposed deposition date for an entire week.

32.     Then, on July 19, 2022, defense counsel emailed plaintiffs' counsel stating: "Our team and Kids2 are unavailable July 27. **We are available August 30. Please let us know if that date works for the 30(b)(6).**"[4]

33.     On July 21, 2022, plaintiffs' counsel responded to the above request by email stating: "Hey Jenna. I think that should work but the current discovery deadline, I believe, is August 1. Would you all be agreeable to a stipulation to extend the discovery through September without altering any of the other deadlines?"

34.     Defense counsel did not respond to this email for four days.

35.     Therefore, on July 25, 2022, plaintiffs' counsel followed up with an email: "Hey Jenna. What's the defendant's position on the below?"

36.     In response, on July 25, 2022, defense counsel wrote: "**We will stipulate to conducting the deposition of Kids2's 30(b)(6) designee on a date beyond the August 1 deadline. Frank [plaintiffs' counsel] and I similarly agreed to take Dr. Huddle's [a fact witness] deposition on Aug. 2** to accommodate your office's unavailability on the proposed July dates. We are not otherwise amenable to extending discovery in general beyond the two depositions stated above."

37.     Based on defense counsel's explicit statement that they "stipulate to conducting the deposition of Kids2's 30(b)(6) designee on a date beyond the August 1 deadline," on July 28, 2022, plaintiffs' counsel served a Notice of Deposition on defense counsel via email for this deposition to occur on that date. *See* 7/28/22 Notice of Deposition of Corporate Designee, attached as Exhibit "A".

---

[4] Up until the *very first* deposition of a defense witness, defendants were happy to conduct depositions after the August 1, 2022 discovery deadline by agreement of all counsel. Multiple such depositions have occurred.

38.     Given plaintiffs' concern that there may be additional fact witnesses that plaintiffs would need to depose based upon the testimony of the corporate designee on August 30, 2022 and/or defendants' document production, on July 28, 2022, plaintiffs' counsel submitted a letter to the Court via facsimile requesting a telephone conference to discuss the issues surrounding outstanding fact discovery. *See* Plaintiffs' Counsel's July 28, 2022 Letter to the Court, attached as Exhibit "B".

39.     On July 28, 2022, one of the Court's Judicial Law Clerks, Mr. Gary Robinson, emailed counsel for all parties stating:

Good afternoon:

The Court is in receipt of Mr. Bosworth's letter requesting a telephone conference in the above case.  Judge Haines is preparing for a criminal jury trial in Erie set to begin on Monday August 1.  She has read the letter, however, and asked me to email you the following response:

- Fact Discovery Deadline: at this time, in light of the deposition already scheduled for August 30, 2022, the Court would be amenable to extending the fact discovery deadline to August 30, 2022, with all other deadlines remaining in place.   If the parties can agree to that date, she would request a joint motion to extend the current August 1 fact discovery deadline to August 30.  If defense counsel does object to that extension, Plaintiff's counsel should file a motion for extension, and defense counsel are free to file a response in opposition setting forth the basis for their objection.   The post-discovery status conference currently is set for September 1, 2022.  The Court intends to leave that date in place and any remaining issues with fact discovery, including the need for an additional extension to September 30, can be addressed at that time.

- Document Production:  the last paragraph of the letter alludes to a possible discovery dispute.   As per Judge Haines' practice, she requires the parties to meet and confer on discovery disputes first, then request a telephone conference.    As indicated, Judge Haines is preparing for a criminal jury trial set to begin on Monday, August 1, which is expected to last the entire week.   Accordingly, she is directing the parties to **confer in good faith** in an attempt to work out the dispute over the course of the next week.   If the parties are unable to resolve it, she is asking that they contact the Court again by Monday August 8, at which time the Court will schedule a telephone status conference to discuss the matter, either that week or the following week.

If anyone has any questions or concerns, please contact me.

Thank you,

Gary

Gary Robinson
Judicial Law Clerk to the
Honorable Stephanie L. Haines

40.     On July 29, 2022, defense counsel, Alanna Bassin, sent a letter to the Court. *See*

Defense Counsel's July 29, 2022 Letter to the Court, attached as Exhibit "C". In this letter, defense

counsel stated their proposal that "the parties file a joint motion to extend discovery to allow

Plaintiffs to complete the 30(b)(6) deposition only, which was previously agreed to by the parties.

Kids2's corporate representative's deposition should resolve any remaining discovery questions

that Plaintiffs have. This further allows time for the parties to resolve any issues related to

plaintiffs' outstanding authorizations and other discovery. Therefore, and as you suggested in your

note, the parties can report their positions on discovery to the Court at the September 1 status

conference."

41.     On July 29, 2022, Mr. Robinson emailed counsel for all parties:

Good afternoon:

Judge Haines is in receipt of Ms. Bassin's letter regarding the above case.    This is her response:

If the parties can agree to the proposed solution set forth in the last paragraph of the letter, then
they should file a joint motion to extend as set forth in that paragraph.   If, however, the parties
cannot agree to that proposed solution, then Judge Haines would direct Plaintiff's counsel to file
a motion for extension setting forth his position, and defense counsel can file a response setting
forth theirs, and she will address it by order.

If anyone has any additional questions with this procedure, please contact me.

Thank you,

Gary

Gary Robinson

Judicial Law Clerk to the
Honorable Stephanie L. Haines

42.     On August 8, 2022, defense counsel served objections to plaintiffs' counsel's Notice of Deposition, making clear they intend to not produce any of the sought-after documents, including the documents related to infant deaths in other of defendants' products designed and sold for inclined infant sleep. *See* Defendants' Objections to Plaintiffs' Notice of Deposition of Corporate Designee, attached as Exhibit "D".

43.     Following receipt of the above emails from the Court, plaintiffs' counsel and defense counsel met and conferred on a telephone call.

44.     Following the telephone call, plaintiffs' counsel emailed defense counsel a proposed Stipulation to submit to the Court that stated as follows:

> 1.     The corporate designee deposition of defendants shall proceed on August 30, 2022, at 9:00 a.m. at Kline & Specter, P.C. as outlined in plaintiffs' Rule 30(b)(6) Corporate Designee Notice of Deposition;

> 2.     Counsel for all parties agree to meet and confer following the corporate designee deposition on August 30, 2022, to discuss whether plaintiffs believe there is any need for any additional depositions of fact witnesses;

> 3.     Following the August 30, 2022, corporate designee deposition, to the extent that plaintiffs' counsel believe additional depositions are required and/or an extension of the discovery deadline is warranted, these issues shall be addressed with the Court at the previously scheduled Post-Discovery Status Conference on September 1, 2022 at 10:30 a.m.

*See* Plaintiffs' Proposed Stipulation, attached as Exhibit "E".

40.     This proposed Stipulation was fair. It proposed that plaintiffs only take the corporate designee deposition (and no other fact witness depositions) between now and the September 1 conference and, to the extent the corporate designee deposition mooted all other fact discovery issues, there would be no more need for any more fact discovery in plaintiffs' view.

41.     Upon receipt of plaintiffs' proposed Stipulation, defense counsel sent plaintiffs' counsel a different Stipulation that asked plaintiffs' counsel to agree that plaintiffs' corporate designee deposition would be limited in scope by the defendants' objections. In this same email, defense counsel threatened to cancel the corporate designee deposition despite agreeing to conduct the deposition on August 30, 2022.

42.     The corporate designee deposition scheduled for August 30, 2022, shall proceed as scheduled. Prior to this deposition, defendants should be compelled to produce all documents that defendants have previously produced in other cases involving infant injuries and death from one of defendants' inclined sleep products. The corporate designee deposition very well may moot any remaining issues regarding fact discovery. The deposition should not be limited in any way, and defense counsel shall not be permitted to instruct the corporate designee to not answer questions unless to preserve a privilege. To the extent there are remaining issues related to fact discovery or depositions following this deposition, these issues can be addressed by the Court at the September 1, 2022, Post-Discovery Status Hearing.

## II.   <u>Legal Standard</u>

43.      The Federal Rules of Civil Procedure are liberal in terms of discovery allowed.

44.     Specifically, any party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

45.     "Information need not be admissible in evidence to be discoverable." *See, e.g.*, *In re Schaefer*, 331 F.R.D. 603, 607 (W.D. Pa. 2019).

46.     The Federal Rules of Civil Procedure permit a party to take discovery of a corporate defendant by way of corporate designee deposition. Fed. R. Civ. P. 30(b)(6).

47.     When noticed, the defendant "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." *Id.*

48.     A notice of deposition to a party may be accompanied by a request to produce documents and tangible things at the deposition. Fed. R. Civ. P. 30(b)(2).

49.     During a deposition, the lawyer may object "but the examination still proceeds." Fed. R. Civ. P. 30(c)(2).

50.     "A person may not instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *Id.*

## III.   <u>Legal Argument</u>

51.     Here, the defendants' discovery produced in other cases involving inclined products designed for infant sleep is relevant to plaintiffs' negligence, strict liability, and warranty claims. These documents are also relevant to plaintiffs' demand for punitive damages because they evidence prior knowledge and reckless indifference.

52.     Defendants' insistence that their "bouncers" are different than their "inclined sleepers" is a distinction without a difference.

53.     The point is that both products: (1) were designed by the defendants; (2) were sold and marketed by the defendants as products infants could and should sleep in; and (3) sit at an incline.

54.     Therefore, the hazards that make defendants' "inclined sleepers" dangerous and defective are the same hazards that make the defendants' "bouncers" dangerous and defective.

55.     Accordingly, any design decisions, knowledge, or information the defendants obtained regarding the hazards associated with their "inclined sleeper" products is relevant to this

case because it tends to show defendants knew or should have known that any product sold for infants to sleep in should not be at an angle. This is especially so given that defendants have recalled the "inclined sleepers" but have chosen to continue to sell the "bouncers."

56.     In this case, the question of whether a product is defectively designed is governed by state common law since this Court is sitting in diversity. The question of "design defect" depends on various factors under Pennsylvania law, such as: (1) whether the foreseeable risks of harm could have been reduced or avoided by adoption of a reasonable alternative design; and (2) whether the product contained adequate instructions or warnings. *See Lynn v. Yamaha Golf-Car Co.*, 894 F. Supp. 2d 606, 627–28 (W.D. Pa. 2012) (citing case law and Restatement provisions).

57.     Inherent in a strict liability case is the question of whether the risk of harm in the product was foreseeable to the defendants *Id.* Therefore, in this case, one of the issues is: Was the risk of death and suffocation to infants posed by products that sat at an incline foreseeable to the defendants? Of course, to answer this question, plaintiffs are entitled to know what information and knowledge defendants knew about the dangers associated with the recalled "inclined sleeper" products (not just the "bouncer" products) because both products are made for infants to sleep in and sit at an angle. Defendants are trying to hide evidence in this case by creating a grammatical distinction between "bouncers" and "inclined sleeper products." But this position has no support in the law.

58.     Nor does defendants reliance on regulations get them anywhere. Plaintiffs anticipate defendants will bring up the fact that some of the regulations or industry standards governing inclined sleeper products are different than that of bouncer products. But it has been well-established law, for decades, that evidence of compliance—or lack thereof—with industry standards and regulations is not dispositive to whether a product is defectively designed. *See, e.g.*,

*Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 368 (Pa. 2014); *Harsh v. Petroll*, 840 A.2d 404, 424–

25 (Pa. Commw. Ct. 2003) (citing cases). While the regulations applicable to the bouncers versus

inclined sleeper products may be relevant to cross-examination of experts, defendants should not

be permitted to handcuff plaintiffs from exploring defendants' design of all products made for

inclined infant sleep during the discovery stage of this litigation. Simply put, the question of

whether the product in this case is defective does not turn on the applicability (or lack thereof) of

any particular regulation or industry standard.

**III.**   **Conclusion**

     **WHEREFORE**, plaintiffs respectfully request that the Court grant their instant motion to

compel and: (1) order the corporate designee deposition to occur on August 30, 2022; (2) order

that defense counsel may not instruct the corporate designee to not answer questions at the

deposition unless to preserve a privilege; and (3) produce all documents to plaintiffs that have

previously been produced to other plaintiffs in lawsuits arising out of the injury or death of a child

in one of defendants' inclined products designed for infant sleep

                    Respectfully submitted,

                    **KLINE & SPECTER, P.C.**

By:    */s/ Thomas E. Bosworth*
         SHANIN SPECTER, ESQUIRE
         THOMAS E. BOSWORTH, ESQUIRE
         *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas E. Bosworth, Esquire, hereby certify that a true and correct copy of Plaintiffs'

Motion to Compel was served via electronic filing on all counsel of record.


**KLINE & SPECTER, P.C.**

By:     <u>*/s/ Thomas E. Bosworth*</u>
         SHANIN SPECTER, ESQUIRE
         THOMAS E. BOSWORTH, ESQUIRE
         *Attorneys for Plaintiffs*

Date: 8/17/22