UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TANYA MCCARTNEY** and **MARK MONTGOMERY III**, Individually and as Administrators of the **ESTATE OF KAIDON A. MONTGOMERY**,<br><br>Plaintiffs,<br><br>vs.<br><br>**KIDS 2, INC. f/k/a KIDS II, INC.**; and **KIDS 2, INC. d/b/a, t/a, a/k/a INGENUITY**,<br><br>Defendant. | Civil Action No.: 3:21-CV-166<br><br>**KIDS 2, INC.'S MOTION TO STRIKE IMPROPER REBUTTAL EXPERT TESTIMONY** |

Kids 2, Inc. moves this Court to strike improper "rebuttal" testimony of Plaintiffs' experts Mr. James L. Glancey, Ms. Erin M. Mannen, Dr. Wayne K. Ross, Dr. Dennis Rosen, and Ms. Marietta S. Robinson, and to exclude the subject testimony. Kids2 requests oral argument on this Motion.

## INTRODUCTION

Stemming from Plaintiffs' incomplete initial expert reports—where their experts failed to review documents and offer opinions Plaintiffs *now* wish they had—Plaintiffs are trying to salvage their case through improper conduct. Plaintiffs have stonewalled expert discovery and engaged in misconduct ranging from not producing expert files (which Kids2 still does not have for several experts) to obstructing depositions (the subject of Kids2's motion for sanctions). Now, however, Plaintiffs are attempting to rewrite their case by serving expert "rebuttal" reports that contain entirely new opinions and introduce new documents.

Plaintiffs' rebuttal disclosures are nothing more than an attempt to supplement and fix their case-in-chief—long past their deadline to do so—by offering novel testimony and advancing new theories under the guise of rebuttal. This is improper. Rebuttal testimony is only permitted to directly contradict or rebut evidence put forth by the opposing party's expert. Courts have

repeatedly held it is impermissible to use rebuttal testimony to advance new arguments or evidence, or to correct oversights from initial expert reports. But that is exactly what Plaintiffs have tried to do here: shuffling in new theories and documents to fill holes in their experts' initial reports and depositions. Therefore, this Court should strike the portions, identified in this Motion, of Plaintiffs' rebuttal evidence that constitutes improper rebuttal testimony.

## BACKGROUND

Despite this being *Plaintiffs'* lawsuit, it was Kids2 who moved the case forward during fact discovery. Kids2 subpoenaed documents, noticed all the fact-witness depositions, and cooperatively and timely responded to Plaintiffs' discovery. Plaintiffs, on the other hand, were not only stagnant but actively got in the way of moving the case forward as has been raised with this Court on multiple occasions. Plaintiffs' dilatory conduct has included failing to execute authorizations, clandestinely removing documents that hurt their case from their production of non-party documents, refusing to produce key information such as product ID, and even failing to appear at court-ordered mediation. As the fact-discovery deadline approached, Plaintiffs had failed to notice a single deposition, including Kids2's corporate representative.[1] Plaintiffs' irreverence to the discovery process continued into expert discovery, where they failed to provide their experts essential documents and information, resulting in their experts admitting during deposition that their work was sometimes incomplete or that they were missing complete files.

Unsurprisingly, given how ill-prepared their experts were, Plaintiffs' experts had deficient initial reports that were missing opinions. For example, Plaintiffs' forensic pathologist, Dr. Ross, openly testified that he was retained to opine on microscopic slides, but he had not received them

---

[1] In a good-faith attempt to keep this litigation progressing, Kids2 agreed to go forward with the corporate representative deposition *after* the close of fact discovery.

in time to opine on them in his expert report. (Ex. A, Dr. Ross's Dep. at 9:15-19.) And Plaintiffs' design-engineer expert, Mr. Glancey, had none of Kids2's design documents or even the deposition of Kids2's corporate representative at the time he issued his report and was deposed. (*See* Ex. B, Dr. Glancey's Initial Expert Report, at 1.)

Because Plaintiffs' initial expert reports were deficient, and their ability to timely supplement them had passed, Plaintiffs opted to disclose new case-in-chief opinions in new reports that are brazenly masquerading as rebuttal. These so-called rebuttal reports include: brand new opinions about the Ingenuity SmartBounce Automatic Bouncer Moreland ("the Bouncer"); novel theories on defect and causation; opinions on documents that experts failed to review or opine on for their initial reports; and documents that Plaintiffs simply want to use in their *prima facie* case that have nothing to do with the expert's opinions. None of that is rebuttal testimony. All of it constitutes opinions that should have been disclosed, if at all, in Plaintiffs' initial expert reports or timely supplemental reports.

Plaintiffs' discovery abuse culminating in the disclosure of improper rebuttal reports threatens acute prejudice to Kids2 and cannot be overlooked, and this Court should strike Plaintiffs' improper expert "rebuttal" opinions.

## **LEGAL STANDARD**

Rule 26(a)(2)(D) of the Federal Rules of Civil Procedure explains that rebuttal experts are "intended *solely* to contradict or rebut evidence" put forth by the opposing party's expert. Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added). Where a party improperly withholds case-in-chief opinions, theories, or bases until the rebuttal phase, the putative rebuttal must be excluded "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Indeed, "[i]t is well settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal

may be rejected, so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984).

## ARGUMENT

Each of Plaintiffs' rebuttal expert reports contain multiple opinions that have *nothing* to do with Kids2's expert reports. Because this is an improper attempt to simply bolster Plaintiffs' case-in-chief and add to their initial expert reports, these improper rebuttal statements must be struck.

### I. Plaintiffs' rebuttal expert reports contain improper opinions.

It is axiomatic that "[r]ebuttal cannot be used to correct a party's oversights in its case-in-chief." *Byrd v. Aaron's, Inc.*, No. 1:11-CV-00101, 2017 WL 1093286, at *4 (W.D. Pa. Mar. 22, 2017). Indeed, the "applicable case law prohibits an expert from using rebuttal as a 'do-over' of an original report." *Id.* Rather, "a party may *only* submit an expert rebuttal if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party according to the deadlines created by the court." *Avco Corp. v. Turn & Bank Holdings, Inc.*, No. 4:12-CV-1313, 2017 WL 2224915, at *19 (M.D. Pa. May 22, 2017) (internal quotation marks omitted). In other words, rebuttal testimony is strictly limited to *directly* contradicting or rebutting the opposing party's report. *See Byrd*, No. 1:11-CV-00101, 2017 WL 1093286, at *4 (W.D. Pa. Mar. 22, 2017) ("rebuttal and reply reports may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert . . . ***expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal.***" (emphasis added)).

Thus, federal courts in Pennsylvania routinely strike rebuttal expert reports when they fail to directly address the opposing party's report. *See, e.g.*, *Fulton Fin. Advisors v. Natcity Invs., Inc.*, No. CV 09-4855, 2016 WL 5461897, at *2 (E.D. Pa. Sept. 28, 2016) (striking portions of rebuttal

4

report that contains a new argument concerning his damage calculations because it was neither an "elaboration of the first report" nor directly rebutting the other party's expert); *Bowman v. Colomer*, No. CIV.A. 09-1083, 2011 WL 3812583, at *2 (W.D. Pa. Aug. 29, 2011) (striking rebuttal report because it adds "new" arguments and discusses an issue for the "first time"); *In re Asbestos Prod. Liab. Litig. (No. VI)*, No. 09-CV-74351X, 2012 WL 661673, at *3 (E.D. Pa. Feb. 8, 2012) (striking improper rebuttal expert report because it "does not directly rebut the defendant's experts"), *report and recommendation adopted sub nom. In re Asbestos Prod. Liab. Litig. (No. IV)*, No. 09-74410, 2012 WL 661660 (E.D. Pa. Feb. 29, 2012).

Here, Plaintiffs' rebuttal reports contain impermissible opinions that are not in direct rebuttal of any of Kid2's experts, and should therefore be struck.

### A. Mr. James Glancey's rebuttal opinions

Mr. Glancey is Plaintiffs' design-engineer expert. (*See generally* Ex. B, Mr. Glancey's Initial Expert Report.) During his deposition, despite Plaintiffs' counsel repeatedly calling Kids2's counsel a "liar" for suggesting that Kids2's design records were not in his file, Mr. Glancey admitted he never saw any Kids2 design documents related to this case, and that his entire opinion was based on his understanding that there were no such documents. He was clearly surprised to find out at his deposition that Kids2 had produced design documents and Plaintiffs' counsel had simply failed to provide them to him for his consideration. Now, after his deposition, Mr. Glancey is attempting to offer numerous novel opinions (that he could have formed if he had initially reviewed the design documents) under the guise of rebuttal testimony. This is improper.

#### 1. "Rebuttal" to Drs. Prange and Sala.

Since Mr. Glancey did not have Kids2's design documents at the time he formed his initial opinions, he has used his rebuttal report as an opportunity to introduce novel design opinions. To circumvent the fact he failed to supplement his original report with these opinions, he has simply

5

labeled the opinions as rebuttal to Drs. Prange and Sala's report. This is improper, and Kids2 requests this Court strike all novel design opinions contained in Section III of his report that do not directly rebut Drs. Prange and Sala (Ex. C, Mr. Glancey's Rebuttal Expert Report, at 1-9):

- Paragraph 5. Mr. Glancey opines that the Bouncer is "substantially similar" to other products. This opinion was not in his original report and is not rebuttal to any of Kids2's experts.

- Paragraph 6. Mr. Glancey cites to a CPSC supplemental notice of proposed rulemaking to bolster his initial opinions. But this citation is not in his original report and is not rebuttal to any of Kids2's experts.

- Paragraph 9. Mr. Glancey states in his initial report that a sleeping surface should be angled at 10 degrees or less, which is a safe range. But his rebuttal report contains the contradictory opinion that anything *around* 10 degrees (even right under) is unsafe due to margin of error. This novel opinion contradicts his initial opinion and is improper. *See* Byrd, No. 1:11-CV-00101, 2017 WL 1093286, at *4 (W.D. Pa. Mar. 22, 2017) ("An expert's rebuttal report should be stricken if it contains new opinions or information which contradicts the expert's initial report").

- Paragraphs 11 and 12. Mr. Glancey opines on design documents that he did not opine on in his original report (but could have), and baselessly frames this as rebuttal testimony.

- Paragraph 13. Mr. Glancey opines on acceptable design processes for engineers. This opinion was not in his original report and is not rebuttal to any of Kids2's experts.

- Paragraph 18. Mr. Glancey opines that that given the Bouncer's warnings, sleeping in the Bouncer is a reasonably foreseeable outcome. This opinion was not in his original report and is not rebuttal to any of Kids2's experts.

- Paragraph 19. Mr. Glancey cites to a manual to opine about the beneficial outcomes from FMEA's on product safety. But this citation is not in his original report and is not rebuttal to any of Kids2's experts.

- Paragraph 19. Mr. Glancey opines that given the concerns of SIDS and the associated failure and recall of sleepers, Kids2 should have been "motivated" to ensure their product was as safe as possible. This opinion was not in his original report and is not rebuttal to any of Kids2's experts.

- Paragraph 19. Mr. Glancey opines on correspondence between Kids2 and CPSC. This opinion was not in his original report and is not rebuttal to any of Kids2's experts.

Plainly put, Mr. Glancey cannot use Kids2's expert report to bootstrap in multiple novel design opinions—that are not in rebuttal to anything—that he could have (but did not) include in his original report.

### 2. Opinions relying on the depositions of Mr. Andrew Farhat and Ms. Katelyn Taylor.

At the time of Mr. Glancey's deposition, he had not only not reviewed Kids2 design documents, but he had not reviewed Mr. Farhat (Kids2's vice-president of product integrity) and Ms. Taylor's (the deputy coroner) depositions. (Ex. B, Mr. Glancey's Initial Expert Report, at 1.) Ms Taylor's deposition was taken well before Mr. Glancey's report was due, and Mr. Farhat's deposition was available to Mr. Glancey before his deposition. If he wanted to offer novel opinions regarding these depositions, Mr. Glancey should have included in his initial report or supplemented

his report. But that is not what Mr. Glancey did. Instead, he proceeded with his deposition without reviewing either of these transcripts and continued to not supplement through the date that Kids2's expert reports were due (December 23, 2022). Nearly four months after his initial report was due, he has now prepared a "rebuttal" report containing an entire section (Section IV) regarding his opinions on Mr. Farhat's deposition, as well as other opinions through his report that rely on Mr. Farhat and Ms. Taylor's depositions. (Ex. C, Mr. Glancey's Rebuttal Expert Report, at 10-14.) This is not rebuttal testimony, there is nothing that these opinions rebut. Plaintiffs do not get to offer—through rebuttal testimony—initial expert testimony on depositions that their experts did not review previously (but had access to). *See Avco Corp.*, No. 4:12-CV-1313, 2017 WL 2224915, at *19 (M.D. Pa. May 22, 2017) (explaining that rebuttal reports "may cite new evidence and data" only if it "is offered to directly contradict or rebut the opposing party's expert").

And to be clear, this is not Mr. Glancey satisfying some unexplained urge to discuss these depositions despite them not being within his scope of work. Mr. Glancey is Plaintiffs' design expert. His opinions are intended to focus on one key issue: the bouncer's purported design defect. Yet, he provided his expert report and sat for a deposition without any company design information and then failed to supplement his report. He now tries to bootstrap related opinions in using his rebuttal report, referring to cross-examination deposition testimony of Mr. Farhat and Ms. Taylor that should have been used for his initial opinions. In essence, this is another last-ditch effort—like using Drs. Prange and Sala's opinions—to offer novel design opinions without using the design documents or case information he failed to initially review.

Because this is impermissible, Kids2 respectfully requests this Court strike all opinions in Mr. Glancey's report that rely on Mr. Farhat and Ms. Taylor's depositions.

B.     **Ms. Erin M. Mannen's rebuttal report.**

Ms. Mannen is Plaintiffs' biomechanical-engineering expert who purports to have conducted a study on infant kinematics that found incline positioning from products "functionally equivalent" to the Bouncer can cause asphyxiation. (Ex. D, Ms. Mannen's Initial Expert Report, at 19.) While her study in no way actually supports this conclusion, and her opinion cannot survive a Rule 702 motion (forthcoming), the subject of this Motion is Mannen's improper rebuttal opinion on a product manual from an entirely different product supports her initial opinion.

1.    **Kids2 AnyWay Sway™ PowerAdapt™ Dual-Direction Swing's Product Manual.**

In a blatant attempt to introduce new evidence that is not actually related to Ms. Mannen's opinion—and certainly not rebuttal testimony—Ms. Mannen opines on the Kids2 AnyWay Sway™ PowerAdapt™ Dual-Direction Swing and its manual. This is not only an entirely different product than the Bouncer at issue, but it is not even a bouncer, it is swing.

Here, Ms. Mannen opines in her rebuttal report that the Kids2 AnyWay Sway™ PowerAdapt™ Dual-Direction Swing's product manual supports her initial opinion that the chin-to-chest position can create difficulty breathing. (Ex. E, Ms. Mannen's Rebuttal Expert Report, at 4.) She does not attempt to frame it as a rebuttal to any of Kids2's experts (which it is not). She simply contends it supports an initial opinion, so she opines on this novel evidence. But rebuttal reports can only introduce new evidence if it is to refute or contradict the opposing party's experts. *See Avco Corp.*, No. 4:12-CV-1313, 2017 WL 2224915, at *19 (M.D. Pa. May 22, 2017) (explaining that rebuttal reports "may cite new evidence and data" only if it "is offered to directly contradict or rebut the opposing party's expert"). If Ms. Mannen wanted to discuss entirely different products and their documents, she should have included it in her initial report or she should have timely supplemented her report—including it in a rebuttal report is improper.

9

To fully appreciate Plaintiffs' improper attempt to add this new evidence, it is important to understand one of Plaintiffs' undeveloped theories, which is that unrelated products are somehow relevant to this case. This case is about a *Bouncer*. It is regulated by rules specific to bouncers. It is categorized by the government as a bouncer. Despite this being unassailable fact, Plaintiffs want to equate the Bouncer to a different type of product called an inclined sleeper. They also apparently now want to equate it with yet another type of product that is fundamentally different and subject to different regulations: an infant swing. While Kids2 disputes the purported equivalence of the products, the merits of the classification argument is not at issue in this Motion; what is at issue is Plaintiffs' attempt to add new evidence through rebuttal reports to bolster their position. That is improper. *See, e.g.*, *Matthews v. Pennsylvania Life Ins. Co.*, No. 2:12-CV-896-TC-PMW, 2014 WL 2818661, at *2 (D. Utah June 23, 2014) ("[T]his court concludes that the addendum to Plaintiff's rebuttal expert report contains improper rebuttal testimony because it presents new evidence that is being used to bolster Plaintiff's case-in-chief."); *Solfest v. Arctic Cat Inc.*, No. 07-CV-427-SLC, 2008 WL 2600889, at *2 (W.D. Wis. Apr. 18, 2008) (striking rebuttal report because "[e]ven a brief perusal of the report clearly demonstrates that plaintiffs are bringing in new theories of liability and new evidence beyond anything mentioned in" the initial report).

Because Ms. Mannen's use of this product manual and different product is not to directly rebut Kids2's experts—and instead is a blatant attempt to introduce novel evidence—this Court should strike her testimony about the Kids2 AnyWay Sway™ PowerAdapt™ Dual-Direction Swing and its manual. *See Avco Corp.*, No. 4:12-CV-1313, 2017 WL 2224915, at *19 (M.D. Pa. May 22, 2017) (explaining that rebuttal reports "may cite new evidence and data" only if it "is offered to directly contradict or rebut the opposing party's expert").

### C. Dr. Wayne K. Ross's rebuttal report.

Dr. Ross is Plaintiffs' forensic-pathologist expert who offered cause-of-death opinions in his initial report. (Ex. F, Dr. Ross's Initial Expert Report, at 5-6.) However, in his rebuttal report, Dr. Ross offers improper novel opinions on: (1) microscopic slides that Dr. Ross had access to before but never opined on; and (2) Kaiden's positioning at the time of his death.

#### 1. Opinions on microscopic slides.

Dr. Ross's initial report does not contain any references to, or opinions regarding, microscopic slides. (*See generally* Ex. F, Dr. Ross's Initial Expert Report.) At the time of his deposition, he testified that while Plaintiffs retained him in part to review slides, he failed to do so as no one provided them to him. (Ex. A, Dr. Ross's Dep. at 9:15-19.) After this deposition, Dr. Ross then served his rebuttal report with numerous opinions about these slides—there is not even an attempt to frame these opinions as a rebuttal to anything. (Ex. G, Dr. Ross's Rebuttal Expert Report, opinions no. 2-5 at p.1-2.) This is patently impermissible.

Dr. Ross cannot offer novel opinions on documents (that he previously could have had access to) in his rebuttal report if it is not being used to rebut anything. As this Court has explained:

> While rebuttal and reply reports may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert ... expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal.

*Byrd*, No. 1:11-CV-00101, 2017 WL 1093286, at *4 (W.D. Pa. Mar. 22, 2017) (quotations omitted). Here, there is no conceivable gray area. Dr. Ross explicitly testified he had not reviewed the slides at the time of his initial report, but that he intended to. This is not rebuttal; this is testimony Dr. Ross (as he stated) *always* intended to offer. But if Dr. Ross wanted to opine on this topic, he should have ensured he had the slides at the time of his report or at the very least, he needed to supplement his report in a timely manner. He failed to do so, and he is now trying to

11

circumvent his untimeliness by nominally labeling his opinion as rebuttal. Because this is improper, the Court should strike Dr. Ross's rebuttal opinions that rely on his analysis of the microscopic slides.

### 2. Kaiden was "in the bouncer, in a slouched position with head to the right."

While Dr. Ross's first improper rebuttal opinion (concerning microscopic slides) was previewed during his deposition—he explicitly testified he wanted to opine on them for purposes of his initial opinions—his second improper rebuttal opinion comes out of nowhere. In his tenth rebuttal opinion, Dr. Ross opines that at the time of Kaiden's death, he was "in the bouncer, in a slouched position with his head to the right." (Ex. G, Dr. Ross's Rebuttal Expert Report, opinion no. 10 at p.2.) Ignoring for now that Dr. Ross has no qualifications to discuss this, framing this opinion as "rebuttal" is perplexing. This novel opinion regarding Kaiden's positioning is not an elaboration of anything from Dr. Ross's initial report, and it is not said to contradict or refute anything Kids2's experts stated. It is, simply put, a brand-new opinion that is wholly improper for a rebuttal report.

## D. Dr. Dennis Rosen's rebuttal report.

Dr. Rosen is Plaintiffs' pediatrician expert who offered medical-causation and safe-sleep opinions in his initial report. (Ex. H, Dr. Rosen's Initial Expert Report, at 19.) However, in his rebuttal report, Dr. Rosen offers improper opinions on: (1) a product manual of an unrelated product; and (2) Kids2's "awareness" of inclined-sleep risks.

### 1. Kids2 AnyWay Sway™ PowerAdapt™ Dual-Direction Swing's Product Manual.

Like with Ms. Mannen's improper rebuttal above, Plaintiffs again try to get in an expert opinion on the product manual of the Kids2 AnyWay Sway™ PowerAdapt™ Dual-Direction Swing—the product that is not only different than the Bouncer, but belongs to an entirely different

12

category of products (swings). But Plaintiffs' apparent desperation to get a novel expert opinion on this irrelevant product is not a permissible reason to introduce rebuttal testimony. Dr. Rosen opines:

> On page 29 of their report, ***Drs. Prange and Sala dispute the notion that the <u>product in question</u>, the Kids2 Ingenuity Automatic Bouncer, predisposes infants towards severe neck flexion, and claim that there is "no basis to conclude the subject product would create such a hazardous position".*** I refer them to Dr. Mannen's product-specific analysis for a detailed explanation of why this is so, and especially when the infant is slouched and/or with their head turned to the side. ***I would also like to refer them to the second page of the product manual for the Kids2 AnyWay Sway™ PowerAdapt™ Dual-Direction Swing, another inclined device, which states: "SUFFOCATION HAZARD: Young infants have limited head and neck control.***

(Ex. I, Dr. Rosen's Rebuttal Expert Report, at 3 (emphasis added).) This is nonsensical as purported rebuttal of Drs. Prange and Sala (whose opinion was on the "product in question"); it is a new opinion meant to introduce evidence of a product not otherwise at issue in the case and its warnings and design.

Plaintiffs' true intentions are apparent in Dr. Rosen's reports. In his initial report, Dr. Rosen opined generally on purported dangers of inclined sleep and that products with an incline can have these risks. (*See generally* Ex. H, Dr. Rosen's Initial Expert Report.) The only specific product he opined on is the Bouncer. Kids2's experts opined the Bouncer is a safe product and does not exhibit these purported risks. (Ex. J, Drs. Prange and Sala's Expert Report, at 47-48.) They too did not discuss any other product. Dr. Rosen's rebuttal must stay within this realm of discussion—***his rebuttal report even admits that Drs. Prange and Sala opined on the safety of the "product in question"***. (Ex. I, Dr. Rosen's Rebuttal Expert Report, at 3.) But instead, Dr. Rosen's opinion strays far afield to discuss a never-before-discussed product (that is a swing, not even a bouncer) simply to introduce its manual as evidence. This is not rebuttal evidence; "true rebuttal experts cannot introduce evidence that should have been part of a plaintiff's original case-in-chief." *Bonser*

13

*v. Waste Connections of Colorado, Inc.*, No. 18-CV-01514-KMT, 2020 WL 1986477, at *3 (D. Colo. Apr. 27, 2020).

Because Dr. Rosen's use of this product manual and different product is not to directly rebut Kids2's experts, this Court should strike Dr. Rosen's testimony about the Kids2 AnyWay Sway™ PowerAdapt™ Dual-Direction Swing and its manual.

### 2. Kids2's "awareness" of inclined-sleep dangers

Not only do Plaintiffs intend to introduce novel evidence of an irrelevant product manual through Dr. Rosen's rebuttal report, but Dr. Rosen takes it a step further and opines that in light of this manual, Kids2 was "aware[]" of inclined-sleep "danger[s]". (Ex. I, Dr. Rosen's Rebuttal Expert Report, at 3 ("If the seat is too upright, infant's head can drop forward and compress the airway," demonstrating awareness on the part of Kids2 to this danger.").) Separate from the fact that he has no basis, qualifications, or expertise to offer notice opinions, this is neither an elaboration of any of Dr. Rosen's initial opinions nor an opinion offered in rebuttal of Kids2's experts. It is an entirely new opinion and is therefore improper.

*First*, Dr. Rosen never opined about Kids2's awareness of inclined-sleep risks in his initial opinion, and he cannot do so for the first time in his rebuttal. In his initial report, Dr. Rosen offered opinions about studies purportedly related to dangers of inclined sleep, that products with an incline can have these risks, and that the incline of the Bouncer was the cause of death. (*See generally* Ex. H, Dr. Rosen's Initial Expert Report.) There is nothing about Kids2's awareness of risks included in his initial report. Thus, this opinion is not an elaboration of anything in Dr. Rosen's initial report.

*Second*, Dr. Rosen's novel "awareness" opinion is certainly not being used to directly contradict or rebut Kids2's experts. Dr. Goldsmith (Kids2's pediatrician expert) never opined about Kids2's awareness of any risks. (*See generally* Ex. K, Dr. Goldsmith's Expert Report.) And

Drs. Prange and Sala (Kids2's engineering experts) limited their opinion to the safety of the Bouncer and its design and warnings. (Ex. J, Drs. Prange and Sala's Expert Report, at 47-48.) Again, there is nothing in their report about Kids2's awareness of risks.

Plainly put, Dr. Rosen's awareness opinion is improper rebuttal evidence that is entirely novel. Thus, while Dr. Rosen offering opinions about a manufacturer's awareness of risks would not pass muster on a Rule 702 motion—this is far outside his realm of expertise and his opinion has no analysis or reliability—it should be struck before Rule 702 motion practice as improper rebuttal testimony.

### E. Ms. Marietta S. Robinson's rebuttal report.

Ms. Robinson's alleged rebuttal report is no doubt Plaintiffs' most egregious attempt to disguise case-in-chief opinions as rebuttal testimony. In their initial expert disclosures, Plaintiffs did not disclose any regulatory experts. Kids2, on the other hand, disclosed Mr. Joe Mohorovic, to opine on product safety and rulemaking for the Bouncer. (*See generally* Ex. L, Mr. Mohorovic's Initial Expert Report.) After seeing this, Plaintiffs apparently decided they wanted a regulatory expert for their *prima facie* case and served a rebuttal report from Ms. Robinson. But the time for introducing new experts to form new opinions was when initial expert reports were due. Plaintiffs cannot disclose a case-in-chief expert for the first time by labeling her report as "rebuttal"—especially when the new expert's opinions do not rebut Kids2's experts. *See In re Air Crash Disaster*, 86 F.3d 498, 528 (6th Cir. 1996) (finding that a party cannot introduce experts "merely by sticking the label 'rebuttal' on a neglected part of its affirmative case").

Demonstrating the fact that Ms. Robinson's regulatory opinions are not rebuttal opinions, but simply regulatory opinions to support Plaintiffs' case-in-chief is the fact that the majority of Ms. Robinson's opinions have nothing to do with the bouncer. Indeed, pages eleven through twenty-six of her report concern *inclined sleep* products manufactured by a different company—

15

Fisher Price. (Ex. M, Ms. Robinson's Rebuttal Expert Report, 11-26.) First, in what appears to be an attempt to opine that Kids2 had notice of incline sleep issues (again, the Bouncer is not an inclined sleeper)—opinions that are clearly NOT rebuttal—she delves into incline sleeper history. Kids2's regulatory expert *did not* opine on inclined-sleep products. But beyond this, a read of Ms. Robinson's report makes clear that she has copied and pasted her report from other inclined sleep cases she has been retained on (as is evidenced in her testimony list at the end of her report). She has basically just taken her opinion from a different expert report, on a different product, from a different case, against a different manufacturer, and changed the product name here to argue notice that Kids2 had in relation to its bouncers with *no* reference to the history of incident reporting as to bouncers. If Plaintiffs wanted to offer opinions related to notice of issues, those opinions needed to be in included their case-in-chief. This is not rebuttal testimony.

Ms. Robinson does not stop there, however. The second half of her expert report is an indictment of the CPSC, essentially referring to it as a toothless organization run by industries to get products on the market. (Ex. M, Ms. Robinson's Rebuttal Expert Report, 26-29.) Not only is it disingenuous to argue that this is rebuttal testimony when Kids2 offers no commentary about their role in the rulemaking process, but Ms. Robinson conspicuously makes no reference to Kids2 in her opinions because these accusations don't apply to them. Regardless, to the extent that Plaintiffs believe the federal standard has been hijacked by industry manufacturers and is somehow not legitimate because of the same, that needed to be in their case-in-chief opinions.

Because Ms. Robinson is not a rebuttal expert—evidenced by her report only nominally rebutting anything—her opinions should be struck.

**II.     The appropriate remedy to Plaintiffs' misuse of rebuttal testimony is to strike the improper opinions.**

After determining that a rebuttal report is improper, "the Third Circuit has directed district courts to weigh certain factors:"

> (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; (5) the explanation for the failure to disclose; and (6) the importance of the testimony sought to be excluded.

*Withrow v. Spears*, 967 F. Supp. 2d 982, 1000 (D. Del. 2013) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)). District courts enjoy broad discretion to weigh these factors and strike an improper expert report. *In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999).

Each of these factors weigh in favor of striking Plaintiffs' improper rebuttal testimony. The first three factors (concerning prejudice, the ability to cure it, and effects on the court's handling of the matter) all suggest striking the testimony. Allowing Plaintiffs to untimely supplement their initial expert reports will require a complete re-do of expert discovery and unjustifiably delay this lawsuit. The fourth and fifth factors (concerning the reasoning for Plaintiffs' improper expert testimony) also weigh in favor of striking the improper testimony. While Plaintiffs have offered no justification for this improper rebuttal testimony, the actual reason is clear: Plaintiffs wanted these opinions in their initial expert reports but failed to include them. Lastly, the sixth factor (the importance of testimony) does not preclude striking these reports. None of the improper rebuttal testimony is dispositive of Plaintiffs' claims, and they do not *need* any of it. In light of these six factors, Kids2 requests the Court strike the improper testimony.

## **CONCLUSION**

Kids2 respectfully requests the Court strike the improper rebuttal testimony identified in this Motion.

|  |  |
|---|---|
|  | **Nelson Mullins Riley & Scarborough LLP** |
| Dated:  January 31, 2023 | *s/ Jennifer L. Bullard*  <br>Alana K. Bassin (Pro Hac Vice)  <br>Jennifer L. Bullard, Esq. (Pro Hac Vice)  <br>Jenna Durr, Esq. (Pro Hac Vice)  <br>1600 Utica Avenue South, Suite 750  <br>Minneapolis, MN 55416  <br>T: (612) 464-4500  <br>F: (612) 255-0739  <br>jenna.durr@nelsonmullins.com  <br><br>-and-  <br><br>William J. Conroy, Esquire  <br>Yasha K. Shahidi, Esquire  <br>Attorney ID Nos.: PA 36433/ PA 322044  <br>Campbell Conroy & O'Neil, PC  <br>1205 Westlakes Drive, Suite 330  <br>Berwyn, PA 19312  <br>T: (610) 964-6387  <br>F: (610) 964-1981  <br>wconroy@campbell-trial-lawyers.com  <br>yshahidi@campbell-trial-lawyers.com  <br>*Attorneys for Defendant, Kids2, Inc.* |

## **CERTIFICATE OF SERVICE**

I, Jennifer L. Bullard, Esq., hereby certify that the foregoing ***KIDS2, INC.'S MOTION TO STRIKE REBUTTAL REPORTS*** by filing the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

**Nelson Mullins Riley & Scarborough LLP**

Dated: January 31, 2023.

*s/ Jennifer L. Bullard*
Alana K. Bassin (Pro Hac Vice)
Jennifer L. Bullard, Esq. (Pro Hac Vice)
Jenna Durr, Esq. (Pro Hac Vice)
*Attorneys for Defendant Kids2, Inc.*