**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TANYA MCCARTNEY** and **MARK MONTGOMERY III**, Individually and as Administrators of the **ESTATE OF KAIDON A. MONTGOMERY**,<br><br>    Plaintiffs,<br><br>  vs.<br><br>**KIDS 2, INC. f/k/a KIDS II, INC.**; and **KIDS 2, INC. d/b/a, t/a, a/k/a INGENUITY**,<br><br>    Defendant. | Civil Action No.: 3:21-CV-166<br><br><br>**KIDS 2, INC.'S OPPOSITION TO THOMAS E. BOSWORTH, ESQ'S MOTION FOR LEAVE TO FILE A RESPONSE** |

Nonparty Thomas E. Bosworth's Motion for Leave should be denied or struck for the following reasons:

- It violates the protective order entered in this case.

- It is a motion for leave by title only, and with 43 pages of substantive argument, it greatly exceeds the Court's page limit.

- It meanders through wholly irrelevant topics and information.

- It rewrites the history of this case, and mispresents multiple facts.

- Kids2 has never interfered with Mr. Bosworth's due process rights.

**1.    Mr. Bosworth's Motion Knowingly Violates the Protective Order.**

A stipulated protective order was executed by the parties on July 6, 2022, and entered by the Court on July 12, 2022. Protective Order [Doc. 39]. Bosworth is no longer counsel for Plaintiffs or affiliated with Plaintiffs' counsel at Kline & Specter. Yet he apparently has retained confidential[1] case materials, and when he filed his motion for leave, he filed a confidential deposition transcript in the public court file in blatant violation of the Protective Order. *See*

---

[1] Review of the docket shows the parties have filed deposition transcripts under seal.

Bosworth Mot. [Doc. 86] (attaching an unredacted copy of Kids2's 30(b)(6) deposition transcript); *see also* Protective Order [Doc. 39] at 5, ¶ 2 (protection of confidential documents extends to transcript pages of deposition testimony addressing such documents).

Given Bosworth's termination from Kline & Specter, he presumably should not have access to confidential case materials. *See* Protective Order [Doc. 39] at 4–5, ¶ 1.a (providing only counsel of record and retained experts and consultants may use confidential documents for the prosecution of this case.) Regardless, he should not be filing any such documents without following the Protective Order provisions for filing under seal.

Kids2 requests that Bosworth's motion be struck from ECF or, alternatively, that the Court seal the confidential deposition transcript attached to Bosworth's motion as "Exhibit A."

## 2.    Mr. Bosworth's Motion Flouts the Rules and the Court's Directions.

While styled as a *Motion for Leave to File*, Bosworth has thrust the entire substantive argument before the Court before obtaining leave. This is after the Court admonished Bosworth that "it will be the attorney of record for the Plaintiffs' responsibility, being Attorney Trunk, to respond [to Kids2's Motion for Sanctions] and decide how he wants to respond, ***not you***." Bosworth Mot. [Doc. 86] at 32 (citing Dec. 5, 2022, Hr'g Tr.) (emphasis added).

Bosworth further flouts the Court's rules by submitting a motion and separate memorandum, each of which is over 40 pages, when "briefs shall not exceed 25 pages." Interim Standing Order, ¶ G.

## 3.    Bosworth's Motion Consists of Entirely Irrelevant Information About Matters Not Raised or Implicated by Kids2's Motion For Sanctions.

Bosworth's 43-page airing of irrelevant grievances does not aid the Court in any way. The motion in which he seeks to interject himself is Kids2's motion for sanctions related to Bosworth's misconduct at the depositions of Plaintiffs' experts. But Bosworth's verbose motion and brief are

devoted to other matters—specifically, the 30(b)(6) deposition of Kids2 and Bosworth's legal dispute with Kline & Specter. Along the way, he again touts past trial victories—a favorite hobby horse—and drones on about the litigation strategy he recommended to Kline & Specter following his departure as lead counsel. None of this is relevant, not remotely. And it appears Bosworth is now using this case as a platform to rehabilitate his image or inspire a courtroom news narrative.

The bottom line is that Bosworth was terminated from Kline & Specter for misconduct similar to that which occurred here. Plaintiffs did not follow him after his termination. He is no longer representing them, and his musings on Kline & Specter's strategic decisions are wasted ink.

### 4.   Bosworth's Recitation of the Discovery History Is Hopelessly Revisionist, and His Complaints About the 30(b)(6) Deposition Are Meritless.

To the extent he attempts to make out a defense of his misconduct during the depositions of Plaintiffs' experts, Bosworth resorts to "whataboutism"—arguing that Kids2 "started it." *See United States v. Jones*, No. 20-10090, 2021 WL 5984901, at *4 (9th Cir. Dec. 16, 2021) (Baker, J., concurring) (describing *whataboutism* as a "relatively new term for th[e] rhetorical device of changing the subject"). Specifically, Bosworth contends that Kids2 somehow acted unreasonably in the runup to the deposition of its corporate designee and that Kids2's objections at the deposition were improper. Both accusations are false.

#### a.   Bosworth received permission to take a 30(b)(6) deposition out of time, but his request to conduct discovery about inclined sleep products was denied.

With less than three weeks of fact discovery remaining and having not taken a single deposition, Bosworth contacted Kids2's counsel on July 12, 2022, to say that with the fact-discovery deadline fast approaching, Plaintiffs were unilaterally noticing a Rule 30(b)(6) deposition to occur on July 27, 2022. Decl. of A. Bassin [Doc. 54] ¶ 15. Acknowledging, however, that the proposed date would provide insufficient time for scheduling and preparation, Bosworth

agreed the parties would need to confer on a new date. That day, Plaintiffs served a 30(b)(6) notice scheduled for July 27, 2022 (13 working days before the fact discovery close). *Id.*

In an attempt to avoid motion practice over Plaintiffs' unreasonably last-minute deposition notice covering numerous topics, Kids2 agreed to proceed with a 30(b)(6) deposition on August 30 but made it very clear it would not agree to extend any other discovery, stating: "We will stipulate to conducting the deposition of Kids2's 30(b)(6) designee on a date beyond the August 1 deadline. . . We are not otherwise amenable to extending discovery in general. . ." *Id.* ¶ 16. Plaintiffs thereafter noticed the 30(b)(6) deposition for August 30, and Kids2 served its objections to the notice on August 8. *Id.* Kids2's objections made abundantly clear its corporate representative would "not testify about any products other than the Ingenuity Automatic Bouncer – Moreland and the Similar Models set forth and defined in footnote 1" therein.

On July 28, 2022, Plaintiffs' counsel wrote to the Court requesting a broad discovery extension to October 7, 2022. *Id.* ¶ 17.

On July 29, 2022, Kids2's counsel wrote to the Court, proposing the parties file a joint motion to extend discovery to allow Plaintiffs to complete the 30(b)(6) deposition **only**. *Id.* ¶ 18.

The Court responded on July 29, 2022, and instructed the parties to either 1) file a joint motion to extend or, 2) Plaintiff's counsel to file a motion for extension. *Id.* ¶ 19.

Defense counsel then informed Plaintiffs' counsel no less than seven times that the Court required a stipulation (i.e., a joint motion) or motion and that an out-of-time deposition would not proceed on August 30 absent that. *Id.* ¶ 20.

Rather than entering a stipulation or filing a motion for extension in accordance with the Court's specific directive, Plaintiffs instead filed an improper motion to compel the deposition of a corporate designee. Pls.' Mot. to Compel [Doc. 42]. The motion included requests that the Court

order Kids2 to answer questions, and produce documents, about inclined sleep products. *Id.* at 12–14. Plaintiffs failed to follow the Court's pre-motion procedures, and their Motion to Compel was denied without prejudice. Order Denying Pls.' Mot. to Compel [Doc. 43].

Plaintiffs were provided the opportunity to discuss their discovery dispute at a status conference that was scheduled at their request for August 24, then rescheduled, again at their request, to August 25. However, Plaintiffs' counsel failed to appear at the conference. ECF #46 (Minute entry re 8/25/22 telephone conference). The Court wrote to Bosworth on August 26, 2022, addressing this history:

> Mr. Bosworth:
>
> I forwarded your email to Judge Haines.  This is her response:
>
> "The fact discovery deadline expired on August 1, 2022. You were provided the opportunity either to file a joint motion to extend that deadline, or an opportunity to file a contested motion to extend the deadline. You did neither. You were provided the opportunity to discuss these matters at a status conference that initially was scheduled at your request on August 24, then rescheduled, again at your request, on August 25. You failed to appear. As a result, the Court is not going to require the deposition of the corporate designee to go forward on August 30. At this point, any matter that you wish to raise may be raised at the post-discovery status conference set for September 1, 2022. The Court will not set another status conference prior to the conference on September 1. . . If you have any further questions, the Court will be happy to address them with you in person next Thursday in Johnstown."  - Judge Stephanie L. Haines
>
> Gary

The parties then appeared for a status conference on September 1, 2022, for which Bosworth showed up twenty minutes late. At that time, the Court ordered that Bosworth could submit a brief outlining why he should be allowed to take a 30(b)(6) deposition out of time. Instead of filing such a brief, Bosworth filed a Motion for Extension of Time to Conduct the Deposition of the Corporate Designee Out of Time [Doc. 51].

Though styled as a motion for extension of time, the motion was essentially a rehash of the earlier filed motion to compel; it sought to take a corporate-designee deposition out of time but

was in equal part a late-filed motion to compel discovery on inclined sleep products. The motion contained a section entitled "Scope of the Corporate Designee Deposition," where Plaintiffs argued discovery should be allowed into the irrelevant product category of Inclined Sleepers. Plaintiffs specifically requested an order: (i) that "defense counsel may not instruct the corporate designee to not answer [inclined sleeper] questions at the deposition unless to preserve a privilege" and (ii) compelling production of "all documents that have previously been produced to other plaintiffs in lawsuits arising out of the injury or death of a child in one of defendants' inclined products designed for infant sleep." Pls.' Mot. [Doc. 51] at 19 (hereafter "inclined sleep requests").

Kids2 opposed Plaintiffs' Motion to Compel, arguing it was procedurally improper because it was filed 18 days after fact discovery closed. Def.'s Opp. To Pls.' Mot. to Compel [Doc. 53]. Kids2 additionally argued that Plaintiffs could and should have raised the dispute about their inclined sleeper requests long before the August 1, 2022, fact discovery deadline because Kids2 had been abundantly clear from the very outset of this case, through numerous discussions, hearings, and written objections that it was not going to produce information on inclined sleepers. Kids2 further opposed Plaintiffs' Motion to Compel inclined sleeper evidence and testimony on the basis that federal law distinguishes and defines Infant Bouncer Seats and Inclined Sleeper Products. The product category at issue—Infant Bouncer Seats—remains on the market today and is governed and defined by 16 C.F.R. Part 1229 – Safety Standard for Infant Bouncer Seats. Part 1229 requires that each infant bouncer seat comply with the provisions of ASTM F2167-19, *Standard Consumer Safety Specification for Infant Bouncer Seats,* approved May 1, 2019. Inclined Sleeper Products are separately defined and regulated. The products differ in almost every aspect, including but not limited to design, manufacturing specification, incline angle, mandatory warning language, warning label location, injury hazard patterns, and regulatory histories. Thus, Kids2

argued that materials and incidents specific to Inclined Sleepers were not reasonably calculated to lead to the discovery of admissible evidence in this matter concerning an Infant Bouncer Seat and not proportional to the needs of the case.[2]

On October 24, 2022, the Court heard oral argument on Plaintiff's motion to take a corporate-designee examination and for testimony and other discovery on inclined sleep products. The Court granted the motion only as to taking a corporate-designee deposition out of time and rejected the remaining pleas to expand the scope of discovery to require Kids2 to testify and produce documents about inclined sleep products. As the Court put it:

> ORDER OF COURT granting [51] Motion to Conduct Deposition of Corporate Designee Out of Time. The deposition of the corporate designee shall take place within 14 days. To the extent Plaintiff requested any additional relief in that motion, such relief is denied. Attorney Bosworth was granted leave only to file a motion for leave to conduct the deposition of the corporate designee out of time, and the granting of the motion is limited to permitting him to take that deposition out of time, *not to conduct any additional fact discovery or to expand the scope of fact discovery*.

Order [Doc. 58] (emphasis added).

In context, the meaning of the Court's ruling is clear: Plaintiffs' motion explicitly sought to expand the scope of discovery to inclined sleep products, and that request was outright denied.

**b.      Given the Court's October 24 ruling, Kids2's defense during the 30(b)(6) deposition was proper.**

Over the course of many pages, Bosworth strains to demonstrate that Kids2's counsel somehow obstructed proper examination of its 30(b)(6) designee. The deposition was contentious, as Bosworth incessantly violated the Court's limits on the scope of discovery and the deposition.

---

[2] Bosworth's implication that Defendants somehow played fast and loose with discovery by only disclosing one incident related to the product when there were five is patently false. Defendant accurately disclosed the one incident related to the product at issue. The five incidents that Bosworth refers to pertain to the Inclined Sleep product not at issue in this case which was voluntarily recalled for incidents unrelated to the issues in this case.

Unlike Bosworth's indefensible conduct, Kids2's counsel never responded with insults, harassment, or coaching the witness.[3] But given Bosworth's insistence on pursuing inquiry the Court had foreclosed, Kids2's counsel was compelled to instruct the witness not to answer questions about inclined sleep products—a course of action that was appropriate in light of the prior motions practice and the rules. *See* Fed. R. Civ. P. 30(c)(2) (authorizing counsel to instruct witnesses not to answer to "enforce a limitation ordered by the court").

Bosworth's excerpts from Kids2's 30(b)(6) deposition fail to disclose the context for Kids2's objections and instructions. Early in the deposition, Kids2's counsel explained the basis for Kids2's scope objection and invited counsel to seek input from the Court if Plaintiffs felt Kids2 was interpreting the Court's discovery order incorrectly:

> I have a court order that specifically only allows you to take the deposition out of time. There was a part of your motion that specifically asked for discovery that was unrelated to this product about a different product. That was part of your motion. We objected to that part of the motion and the court order very clearly states you – only limited to take it out of time, not to – to conduct any fact discovery or expand the scope of fact discovery. Our read of that motion – or that order, she's very clearly saying it was limited out of time which is actually all she allowed you to bring the motion on, to not expand topics, and that she has given a court order that you are not allowed to ask. So I actually think you are violating the court Order by asking questions that are beyond the scope of discovery. And the scope of discovery for this entire case has been about a bouncer and the bouncer. And so we're going to – I don't think we have to discuss anymore. We agree to disagree. But we object and we will not – we are not here to appear today to answer questions related to an inclined sleep product.

Bosworth Mot. [Doc. 86], Ex. A, at 13:21–14:23.

---

[3] As he did at the deposition, Bosworth goes on a great length about some "scribbles" the witness made during conversations with counsel in anticipation of the deposition. Bosworth inexplicably thinks he was entitled to demand and receive copies of those notes contemporaneous with the witness testifying. Kids2's counsel, unfamiliar with the notes the witness referenced, was forced to intervene to confirm their nature. It turns out they were work product and privileged, as counsel suspected, and therefore not discoverable. It is beyond cavil that counsel are entitled to review documents for work-product and privilege before they are produced or their contents divulged.

Thereafter, four different times Kids2's counsel suggested the parties contact the Court to seek clarification its ruling:

- I'm happy if you want to try to get the judge on the phone and get this resolved, I'm happy to do that if that's what you want to do. I don't want to come back. So if I have somehow misread the Court's order, I'm happy to have that resolved. *Id.* at 28:4–9.

- I'm happy to get the judge on the phone. If I've misread this, I'm happy –there's no intend [sic] here. I think you clearly asked for these topics and she has not allowed them. And we are proceeding accordingly and I think the best way to proceed is either do, one, get the judge on the phone or, two, ask questions which you know based on our guidance or our understanding of the Court's guidance are within the scope of the deposition. *Id.* at 30:22–31:6.

- I think Judge Haines has already rule –ruled on it, Tom. I don't understand. If you want to get her on the phone and get clarity, I'm happy to do that like I've already offered. *Id.* at 114:18–24.

- You've spent two and a half hours on questions on inclined sleep when we had – it would have taken one minute for us each to state our position and we could have called the judge. We could have moved on. *Id.* at 268:3–7.

Bosworth declined these invitations and continued to focus almost exclusively on inclined sleep products throughout the lengthy deposition. In response, Kids2's counsel instructed the witness not to answer based on the Court's limitation.

Importantly, Bosworth neglects to tell the Court about *his* behavior at this deposition, which presaged his insulting and harassing behavior at Plaintiffs' experts' depositions. Throughout the 30(b)(6) deposition, Bosworth asked questions in knowing violation of the Court's Order on the scope of discovery, feigned outrage at Kids2's counsel's attempt to keep the questions within the fair bounds of discovery, and attempted to bully and intimidate through insults directed at both Kids2's counsel and its witness. For example:

- He bragged about his courtroom victories and then derogatorily referred to opposing counsel's age. Bosworth Mot. [Doc. 86], Ex. A, p. 166:11–21 ("You sound like the defense lawyers in my last 19.7 million-dollar verdict . . . **she was**

**like your age, I think**. And I – I'll never forget it because I then gave my closing argument and the jury returned a verdict –the largest medical malpractice verdict in the state of Pennsylvania in the year 2022." (emphasis added)).

- Rather than abiding by the court's order or getting the judge on the phone, repeatedly telling counsel how he had never seen conduct like this before. *See, e.g.*, *Id.*, p. 426:9–10 ("You are absolutely ridiculous, do you know that?").

- Repeated intimidation of the witness. *See, e.g.*, *id.*. at 374:19–25 ("I cannot wait to get you in front of a jury. . . I literally can't wait, as a trial lawyer."); *id. at* 190:3– 4 ("His [Mr. Farhat's] credibility is zero . . . I don't respect the way that you respond to questions, sir.").

Kids2 did not seek sanctions related to the 30(b)(6) deposition only because, while Bosworth's conduct was as unprofessional and inappropriate as ever, it did not create prejudice at the 30(b)(6) deposition the way that it did at the experts' depositions.

**5.**   **Due Process**

Kids2 defers to the Court regarding the nature and extent of process due Bosworth in connection with Kids2's motion for sanctions. In light of the fact Bosworth is no longer representing Plaintiffs, is not a party to this litigation, and has already violated the Protective Order by filing confidential materials, Kids2 submits that it would be neither appropriate nor prudent (and it would certainly be unusual) for Kids2 to share case materials with Bosworth, as he has requested. To the extent Bosworth implies Kids2 has stonewalled his request for case materials, Kids2 communicated its position clearly and in writing on February 25:

Tom,

I'm responding as a professional courtesy, but I do not intend for this to create further discussion. We did not file a motion against you in an individual capacity. Our motion seeks to remediate the prejudice your behavior caused Kids2 and leaves

the remedy up to the Court. You raised the issue of responding to the sanctions motion at the last hearing, and Judge Haines made clear that "it will be the attorney of record for the Plaintiffs' responsibility" to decide how to respond, not you. The Court has not Ordered or invited you to file any briefing.

In the circumstances, we do not believe it would be appropriate for us to provide you with case materials your former clients and partners view as inappropriate to share. Your request is further untimely and seeks records that are not even a part of this motion, including information subject to confidentiality. The entire transcripts were provided to the judge and Plaintiffs have responded.  If you feel compelled to attempt to intervene in the motions practice between Kids2 and Plaintiffs, you will need to seek the Court's permission and direction as to how to proceed.

Alana

Bosworth also has access to the Court docket and publicly available documents in the Court file, as demonstrated by his motion for leave, and can follow events closely, as he apparently is doing.

**Nelson Mullins Riley & Scarborough LLP**

Dated: March 6, 2023

*s/ Jennifer L. Bullard*
Alana K. Bassin (Pro Hac Vice)
Jennifer L. Bullard, Esq. (Pro Hac Vice)
Jenna Durr, Esq. (Pro Hac Vice)
1600 Utica Avenue South, Suite 750
Minneapolis, MN 55416
T: (612) 464-4500
F: (612) 255-0739
alana.bassin@nelsonmullins.com
jennifer.bullard@nelsonmullins.com
jenna.durr@nelsonmullins.com

-and-

William J. Conroy, Esquire
Yasha K. Shahidi, Esquire
Attorney ID Nos.: PA 36433/ PA 322044
Campbell Conroy & O'Neil, PC
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
T: (610) 964-6387
F: (610) 964-1981
wconroy@campbell-trial-lawyers.com
yshahidi@campbell-trial-lawyers.com
*Attorneys for Defendant, Kids2, Inc.*

### CERTIFICATE OF SERVICE

I, Jennifer L. Bullard, Esq., hereby certify that the foregoing ***KIDS 2, INC.'S OPPOSITION TO THOMAS E. BOSWORTH, ESQ'S MOTION FOR LEAVE TO FILE A RESPONSE*** by filing the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

**Nelson Mullins Riley & Scarborough LLP**

Dated:  March 6, 2023.

*s/ Jennifer L. Bullard*
Alana K. Bassin (Pro Hac Vice)
Jennifer L. Bullard, Esq. (Pro Hac Vice)
Jenna Durr, Esq. (Pro Hac Vice)
*Attorneys for Defendant Kids2, Inc.*