### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TANYA MCCARTNEY and MARK MONTGOMERY, Individually and as Administrators of the ESTATE OF KAIDON A. MONTGOMERY,<br><br>*Plaintiffs,*<br><br>v.<br><br>KIDS 2, INC. f/k/a KIDS II, INC.; and KIDS 2, INC. d/b/a, t/a, a/k/a INGENNUITY<br><br>*Defendant.* | CIVIL ACTION NO.: 3:21-CV-166 |

**THOMAS E. BOSWORTH, ESQ.'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS AND REPLY IN OPPOSITION TO KLINE & SPECTER, P.C.'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS**

**I.      MATTER BEFORE THE COURT**

Thomas E. Bosworth, Esq.'s Response in Opposition to Defendant's Motion for Sanctions and Reply in Opposition to Kline & Specter, P.C.'s Response in Opposition to Defendant's Motion for Sanctions.

**II.      QUESTION PRESENTED**

Should this Court deny defendant's motion for sanctions where Mr. Bosworth's objections were proper under Rule 30(d)(3)(A) and Rule 30(c)(2) to prohibit defense counsel from embarrassing, oppressing, annoying, and acting in bad faith toward plaintiffs' witnesses, where Mr. Bosworth never had an ample opportunity to seek court intervention pursuant to Rule 30, and where defendant is unable to articulate any actual prejudice resulting from the deposition objections?

*Suggested Answer:*   **Yes.**

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 30 governs conduct of counsel at depositions. Rule 30 represents a guidepost for attorneys conducting discovery, with an eye toward promoting the full process of discovery but also preventing embarrassment, oppression, harassment, or annoyance of witnesses. To that end, Rule 30 expressly provides means and methods that lawyers may utilize in order to limit attorney embarrassment, oppression, or annoyance of witnesses at depositions. Fed. R. Civ. P. 30(d)(3).

At any point during a deposition, the deposition may be limited "on the ground that it is being conducted in bad faith." Fed. R. Civ. P. 30(d)(3)(A). A lawyer may also "limit" a deposition, at any point during the deposition, if the deposition is being conducted "in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *Id.* When an attorney "limits" a deposition in the manner proscribed by Rule 30(d)(3), the lawyer *may*—but is not required—to terminate the deposition altogether. *See id.* (making clear that the deposition will be terminated only "*if* the objecting deponent or party so demands") (emphasis added). A lawyer may also instruct a witness to not answer a question to preserve a privilege. Fed. R. Civ. P. 30(c)(2).

Following the dictates of Rule 30's protection of witness embarrassment, oppression, and annoyance, for decades, district courts have repeatedly permitted counsel to instruct witnesses not to answer questions that run afoul of Rule 30 in this manner. *See, e.g.*, *Marcina v. Smith*, 18 F.R.D. 254 (E.D. Pa. 1955) (questions that would have required the witness to exercise mere "conjecture," because there was no basis for the questions, were unreasonably embarrassing under Rule 30(d) and thus the lawyer properly instructed the witness to not answer these questions); *Covad Communications v. Revonet Inc.*, 267 F.R.D. 14 (D.D.C. 2010) (sanctions denied because lawyer's instructions to witness to not answer various questions was proper since the questions lacked any

foundation and proper form); *U.S. v. Dianon Sys. Inc.*, 240 F.R.D. 40 (D. Conn. 2006) (instruction not to answer questions was not inappropriate where the questions were "improper and the Court would have stricken any answer" anyway); *Stevens v. Sullum*, Civ. Action No. 3:20-CV-1911, 2022 WL 4122195, at *6 (M.D. Pa. Sept. 9, 2022) (counsel properly instructed witness to not answer questions that were "cumulative and/or duplicative" pursuant to Rule 30); *Baloga v. Pittston Area Sch. Dist.*, Case No. 3:16-CV-1039, 2017 WL 2405235 (M.D. Pa. June 2, 2017) (motion for sanctions denied and Court deemed counsel's instructions to witness to not answer questions appropriate given that the questions "ranged too far afield" and were thus "oppressive").

## IV.   ARGUMENT

Defendant's motion for sanctions provides a one-sided and incomplete version of the events that transpired during the depositions of plaintiffs' expert witnesses that occurred between November 8 and November 17, 2022. An examination of the deposition transcripts reveals that no sanctionable conduct occurred. Beyond that, the deposition transcripts actually reveal that defendant's counsel conducted the depositions in a manner that oppressed, embarrassed, and annoyed the witnesses, and repeatedly attempted to invade a witness's privilege with regard to confidential government-sponsored scientific data.

All of Mr. Bosworth's objections were made pursuant to Rule 30 in order to prevent invasion of a privilege or to limit the deposition so as to prevent witness embarrassment, annoyance, and oppression. Mr. Bosworth did not have ample opportunity to seek court intervention under Rule 30(d) for defense counsel's witness embarrassment, annoyance, and oppression due to the termination of his employment on November 18, 2022. The Court should not now sanction Mr. Bosworth for protecting the rights and interests of the plaintiffs' witnesses, especially when Mr. Bosworth did not have an ample opportunity to exercise his right under Rule

30 to seek court intervention to address defense counsel's embarrassment, oppression, and annoyance of witnesses. Most importantly, defendant cannot demonstrate any prejudice due to the deposition objections.

### A.    Deposition of Erin Mannen, Ph.D.

Erin Mannen, Ph.D. ("Dr. Mannen") is a biomechanics expert who plaintiffs retained to offer expert opinions in this case about the dangers associated with the defendant's product.

As Dr. Mannen explained during her deposition, her work investigating the dangers of the defendant's product long predated any work she did as a litigation expert. Specifically, Dr. Mannen was hired and retained by the U.S. Consumer Product Safety Commission ("CPSC")—a federal governmental agency—to conduct a biomechanical analysis at the University of Arkansas to examine the potential hazards of inclined sleep products. During defense counsel's questioning of Dr. Mannen, Dr. Mannen advised defense counsel that she was legally prohibited from discussing anything about her government study that is not explicitly written in the CPSC report that Dr. Mannen authored. *See* Mannen Dep. 17:14-21, attached as Exhibit "A". Dr. Mannen went so far as to explain that she had been "advised" by lawyers to not discuss these matters, clearly bringing them within a privilege. *Id.*

Defense counsel nevertheless forged ahead and attempted to obtain government-classified information that Dr. Mannen had made clear she could not answer pursuant to legal advice she had received and a contract she was subjected to regarding the study. Immediately after being first told that she could not legally discuss "***anything that is not explicitly written in the CPSC report***," defense counsel asked Dr. Mannen a question that defense counsel knew would violate Dr. Mannen's just-asserted privilege, which Mr. Bosworth properly objected to:

> Q.    Okay. And then did you ever meet with anybody from the CPSC in person with respect to your – you know, the work that was beginning in 2018?

> MR. BOSWORTH: I'm going to note my objection because, unless that is discussed explicitly in the report, whether or not she met in person with people at the CPSC, I believe, would fall within the parameters of what she just described she feels she's not permitted to discuss pursuant to that contract with the government and the University of Arkansas.

*Id.* at 18:6-17.

Defense counsel seemed to acknowledge this was wrong, but then went ahead and continued to ask question after question intended to harass Dr. Mannen by invading this important privilege she had pursuant to a government contract and private legal advice Dr. Mannen had received. *See id.* at 21:20-25; 25:9-13; 25:23-26:4; 28:8-14; 28:15-29:4; 29:5-11. Mr. Bosworth's instructions here were the only instructions he provided to Dr. Mannen to not respond to defense counsel's deposition questions. And Mr. Bosworth's instructions here were proper under Rule 30 because the questions were intended to harass, oppress, annoy, and embarrass Dr. Mannen, and also invade a validly asserted legal privilege that Dr. Mannen and counsel clearly articulated. Of course, defense counsel's motion makes no mention of their misconduct here and instead generally states that Mr. Bosworth instructed Dr. Mannen not to answer questions without any legal analysis or proper context.

Defense counsel wrongly states in their motion that Mr. Bosworth instructed Dr. Mannen not to answer questions regarding where the child died. *See* Motion at p. 8. This is a false statement by defense counsel. Mr. Bosworth never prevented defense counsel from asking Dr. Mannen where the minor died. In fact, the opposite is true:

> Q.     To a reasonable degree of certainty, Dr. Mannen, have you come to a conclusion of **where Kaidon Montgomery died**?
>
> MR. BOSWORTH: I'll object because it's been asked and answered, but go ahead and tell her again for the umpteenth time.

A. It's my understanding that Kaidon was found in the bouncer, and my conclusions are based on that understanding. And that understanding is based on the evidence that was presented in what the mother said.

*Id.* at 198:1-9 (emphasis added). Mr. Bosworth allowed Dr. Mannen to answer this question even after defense counsel had harassed Dr. Mannen by repeatedly asking questions (that defense counsel clearly did not like the answer to) regarding the child's cause of death. *See id.* at 193:8-195:10.

When questioning Dr. Mannen about her opinions as to the safety of the Kids 2 Ingenuity Bouncer (*i.e.* the product in this case), defense counsel disingenuously tried to suggest that Dr. Mannen believed "*no* infant products" whatsoever should have a concave surface when, in reality, Dr. Mannen had opined that the Kids 2 Ingenuity Bouncer, specifically, should not have had a concave surface. *Id.* at 191:7-192:1. Because defense counsel was affirmatively misstating evidence, Mr. Bosworth concisely objected on that basis, but allowed the witness to answer. *Id.* at 192:2-7. This is not sanctionable.

Defense counsel ultimately resorted to asking Dr. Mannen various questions about photographs (that had been produced in discovery) but that: (1) defense counsel never *showed* the witness; and (2) defense counsel never confirmed the witness had seen. *See id.* at 146:15-16. Specifically, defense counsel asked Dr. Mannen whether Dr. Mannen had seen "***the*** photograph that included the Boppy nursing pillow." *Id.* at 146:15-16 (emphasis added). This question was oppressive, harassing, and annoying to the witness because: (1) it wrongly insinuated there was one solitary photograph of the Boppy pillow; and (2) the defense lawyer refused to show the witness the exact photograph that the lawyer was asking the witness to authenticate and comment upon. Obviously, for a witness to be able to authenticate or identify a photograph, the witness *needs to actually see the photograph*. Anything short of that is oppressive, harassing, annoying,

and done in bad faith. Hence, Mr. Bosworth's objections to that end. *Id.* at 146:16-148:2, 148:22-149:1.

Adding insult to injury, defense counsel persisted in refusing to show the witness any of the photographs in the face of the witness's request to see which photographs the defense lawyer was referring to:

> Q.    Have you seen a photograph of the Pack 'n Play that was taken in connection with this case?
>
> A.    I would want to see that, which photo you're talking about, before I can comment.

*Id.* at 149:9-12. Defense counsel repeatedly did this despite the witness's polite requests to be shown the documents that defense counsel wanted the witness to comment on under oath. *Id.* at 149:15-22. Defense counsel's hide-the-ball tactics here were clearly harassing and oppressive to the witness and done in bad faith and violative of Rule 30, necessitating Mr. Bosworth's objections.

All of Mr. Bosworth's objections during Dr. Mannen's deposition were proper and necessary to protect the witness from oppression, embarrassment, harassment, and annoyance, and to protect the witness's asserted legal privilege.

## B.    Deposition of Wayne Ross, M.D.

Wayne Ross, M.D. ("Dr. Ross") is a forensic pathology expert who plaintiffs retained to offer expert opinions in this case about the child's cause of death and pain and suffering.

Dr. Ross offered the opinion, among many others, that the child was in the Kids 2 bouncer seat when the child died. *See* Ross Dep. at 70:21-25, attached as Exhibit "B". At his deposition, defense counsel asked Dr. Ross whether he was "assuming" that the child was in the bouncer seat. *Id.* at 71:1-3. In response, Dr. Ross explained the basis for his conclusion that the child was in the bouncer seat. *Id.* at 73:4-9. Dr. Ross then explained he had considered other areas (that he ruled

out) where the child may have been sleeping. *Id.* at 71:10-19, 72:3-6, 72:17-73:4. Defense counsel also asked Dr. Ross to reconcile various other pieces of evidence with his opinion that the child was in the bouncer. *Id.* at 71:20-72:2, 72:7-9, 73:5-74:2, 75:25-9. In response to each question, Dr. Ross provided the basis for his opinion in consideration of all this evidence. *Id.*

After providing this testimony, defense counsel wrongly and disingenuously suggested that Dr. Ross's opinion was based on one single "recanted" statement of one witness, when Dr. Ross had never provided any such testimony. *Id.* at 75:10-13. Dr. Ross's actual testimony, which defense counsel had just elicited, included various pieces of evidence comprised of multiple witness statements, the coroner's report, photographs of the scene, photographs of the child, autopsy photographs, as well as his expert training and experience. *Id.* at 71:20-72:2, 72:7-9, 73:5-74:2, 75:25-9. Based on defense counsel's immediate receipt of Dr. Ross's answers in which he explained the basis of his opinion that the child was located in the bouncer when he died, defense counsel's question was oppressive, annoying, embarrassing, and not asked in good faith, prompting Mr. Bosworth's valid objection.

Defense counsel claims with no basis that Mr. Bosworth "coached" Dr. Ross into responding to a question. During the deposition, defense counsel asked Dr. Ross: "So, other than being able to see an image of blood on the bouncer seat, is there any other sort of basis for your opinion that the blood shown there isn't from somewhere else?" *Id.* at 32:9-12. This question was oppressive, harassing, and asked in bad faith because it wrongly implied that Dr. Ross had immediately testified that he was basing his opinion on *one single photograph* (*i.e.* "***an*** image) of "blood on the bouncer seat." *Id.* (emphasis added). This question was asked in bad faith because Dr. Ross had *just testified* that his opinion was based not on *one single photograph* but rather on "***the photographs***" (*i.e.* multiple photographs) that had been produced in the case, which included

photographs not only of blood on the bouncer seat but also blood on the child's nose. *Id.* at 32:6-8 (emphasis added). Mr. Bosworth's objection here was made under Rule 30 to prevent embarrassment, oppression, and annoyance of the witness who was, at this point, being harassed in bad faith by defense counsel who clearly heard and understood Dr. Ross answers but then tried to falsely reframe them.

It is difficult to conceive, in a case involving the death of an infant, something more harassing than a lawyer suggesting that infants do not feel pain. Everybody knows (or should know) that infants feel pain. But defense counsel went there, and disgustingly tried to suggest that infants' brains do not allow infants to feel pain. *Id.* at 128:7-8. Worse yet, defense counsel asked this question after Dr. Ross had spent hours describing, in horrifying detail, the precise physiological mechanics of how the child's death was painful to the child. *See id.* at 58:13-60:3, 104:9-116:18, 121:19-123:5. In light of this context and backdrop, defense counsel's question on page 128 of the transcript—suggesting infants do not feel pain—was blatantly harassing to the deponent and the parties (the parents of this child). The question was also oppressive, and it was asked in bad faith. Hence, Mr. Bosworth's appropriate objection to the question under Rule 30.

None of Mr. Bosworth's objections to Dr. Ross's testimony were improper, and all of the objections fell squarely within the ambit of Rule 30's prohibition against deposition questions that result in annoyance, embarrassment, harassment, or oppression of the deponent or parties.

**C.    Deposition of Dennis Rosen, M.D.**

Dennis Rosen, M.D. ("Dr. Rosen") is a pediatric pulmonology and sleep expert who plaintiffs retained to offer expert opinions in this case about the child's cause of death and dangers of the Kids 2 product.

During Dr. Rosen's deposition, defense counsel began questioning Dr. Rosen extensively about product warnings. *See* Rosen Dep. 237:3-248:3, attached as Exhibit "C". During this lengthy exchange, defense counsel asked Dr. Rosen **over twenty-five (25)** questions about his opinions regarding the product's warnings. *Id.* Dr. Rosen's responses to these questions were damning for the defendant and constituted a glaring indictment of the inadequacy of the defendant's warnings. Clearly caught off guard by Dr. Rosen's astute ability to bitingly respond to questions regarding the inadequacy of the warnings, *after herself getting into this topic*, defense counsel insultingly, annoyingly, embarrassingly, and oppressively, asked Dr. Rosen: "And you're not going to be offering opinions in this case about warnings. Fair statement?" *Id.* at 248:14-15. This question was uncalled for and asked in bad faith—only because defense counsel did not like the answers she received to her own questions about warnings.

During Dr. Rosen's deposition, Dr. Rosen repeatedly testified that it is unsafe for babies or infants to sleep at an angle or incline. Defense counsel hated this response because their product was designed for babies to sleep in, and it sits at an inclined angle. Therefore, defense counsel embarked on a series of repetitive, annoying, and oppressive questions aimed at trying to pin down Dr. Rosen on the *precise number/angle* he believed made the incline unsafe. These questions were harassing, oppressive, annoying, and asked in bad faith because defense counsel knew Dr. Rosen's opinion did not rely upon a specific *number* or *degree*, but rather upon the general proposition that babies should not sleep at any angle or incline, period. Dr. Rosen testified to this repeatedly throughout the deposition. Therefore, Mr. Bosworth's objection to defense counsel's question, which attempted to serially mischaracterize Dr. Rosen's testimony, was proper. *Id.* at 73:14-78:8. Notably, Mr. Bosworth never instructed Dr. Rosen to not answer this question, did not suggest an

answer, and merely reiterated to defense counsel what Dr. Rosen's immediately preceding testimony was to illustrate the inappropriateness of defense counsel's question.

Defense counsel at one point began asking absurd questions based on hypothetical measurements and angles that were never applicable—or even arguably applicable—to the product at issue in this case. Specifically, defense counsel asked whether a 10-degree angle would be safe for a baby to sleep in. *See id.* at 83:13-15. This question was harassing, annoying, oppressive, and asked in bad faith because there is no evidence in the case indicating that the Kids 2 product at issue was at a 10-degree angle, and defense counsel knew this. Therefore, Mr. Bosworth objected to the question, but did not instruct the witness to not respond. *Id.* at 83:16-20. In fact, defense counsel asked the 10-degree angle question *right after this* exchange, Mr. Bosworth did not even object, and the witness responded: "Babies should be on a flat surface. Flat, on a flat surface." *Id.* at 84:16-22. After this response, defense counsel asked the question *again*, Mr. Bosworth did not even bother objecting, and defense counsel received the same answer back from the witness. *Id.* at 85:9-22. Defense counsel cannot argue with a straight face that this one objection, followed by two repeat questions, is somehow sanctionable.

Dr. Rosen's testimony, as seen throughout the transcript, was clear as day: babies should not sleep at an angle; babies should sleep flat on their backs on a flat surface. This opinion, of course, is horrible for the defendant because the Kids 2 product that plaintiffs' child died in was designed to be at an inclined angle and was designed for sleep. Left with no wiggle room to run away from Dr. Rosen's unequivocal opinions, defense counsel began trying to myopically reframe this "angle" issue while ignoring all of Dr. Rosen's previous testimony.

To this end, defense counsel asked Dr. Rosen whether he was aware of any study—other than Dr. Mannen's study—with a healthy three-month old with good neck control who suffered

chin-to-chest asphyxiation at a 34.8 degree angle. *Id.* at 200:5-9. But, as seen in the deposition transcript, Dr. Rosen had previously testified at length about the studies (other than Dr. Mannen's) that supported his opinion to this effect. *See, e.g.*, *id.* at 150:18-151:15 (testifying about various medical literature from authors other than Dr. Mannen such as Kessa, Dr. Rachel Moon, and Batera). Against this backdrop, defense counsel's suggestion to Dr. Rosen—that the only study he had relied upon was Dr. Mannen's—was harassing, annoying, embarrassing, oppressive, and asked in bad faith because defense counsel knew it was not true. Therefore, Mr. Bosworth's objection, which did not instruct the witness to not answer, was appropriate and justified.

A true read of Dr. Rosen's transcript makes clear that it was defense counsel who was asking insulting, repetitive, accusatory, and unfounded questions. None of Mr. Bosworth's objections were inappropriate let alone sanctionable, and were proper pursuant to Rule 30.

### D.      Deposition of James Glancey, Ph.D.

James Glancey, Ph.D. ("Dr Glancey") is a biomechanical and product expert who plaintiffs retained to offer expert opinions in this case about the dangers and hazards of the Kids 2 product in which the plaintiffs' child died.

During Dr. Glancey's deposition, defense counsel asked whether the CPSC, ASTM, and federal government have different names for "incline sleep products" versus "bouncers," to which Dr. Glancey answered in the affirmative. *See* Glancey Dep. at 124:6-15, attached as Exhibit "D". Despite this response, later in the deposition, defense counsel *again* asked Dr. Glancey to acknowledge there are separate technical names for the products, one of which is labeled a "bouncer" and the other which is labeled an "incline sleeper product." *Id.* at 145:8-18. In response, Dr. Glancey pointed out that defense counsel was mischaracterizing his testimony, and adequately

explained to defense counsel why their semantical difference made no difference from a safety

standpoint:

> THE WITNESS: So I think you've mischaracterized my previous answers. This creates an incline where the infant is placed and that infant can sleep. So it may not be called an incline sleeper in the jargon that the federal government and the standards have adopted, but it's an incline where infants can sleep. And it plays music to induce that sleep it seems to me. So I didn't call it an incline sleeper product. If I did, I was mistaken. It creates an incline and it creates an environment in which infants can sleep. And in fact, your own warnings you put on your product recognize that, even if baby falls asleep. So you've created that.

*Id.* at 145:21-146:15.

Despite receiving his answer multiple times regarding defense counsel's self-created

distinction between a "bouncer" and an "incline sleep product," defense counsel asked the same

question again:

> Q.    Okay. So, you're not saying – it's not – okay. So you're saying that it's not a sleep incline sleeper product, but that it has an incline and it's your belief that it facilitates sleep; fair statement?
>
> A.    I think Kids 2 believes it, too. Look at the warning. Even if baby falls asleep, do not – do not allow prolong periods of sleep. Kids 2 admits that they, in fact – infants can, in fact, sleep in your product. It's not me.
>
> Q.    I mean –
>
> A.    It's not me making that assertion. It's Kids 2 recognizing that is a likely outcome from putting an infant in your product.

*Id.* at 149:4-19.

Following this exchange, defense counsel tried to ask the same question *yet again*:

> Q.    I'm not trying to parse about whether – I disagree, but whether it was specific about the incline or a different product. But at least we're on the same page. Now I understand that you're not calling this an incline sleeper, but you believe that it is a bouncer that has an incline to which kids could fall asleep; fair statement?

*Id.* at 150:19-151:3. At this point, the questioning had clearly become harassing, embarrassing, oppressive, annoying, and not conducted in good faith. Thus, Mr. Bosworth properly objected expressly under Rule 30. *Id.* at 151:4-8.

At one point, defense counsel was asking Dr. Glancey whether the warning on the Kids 2 product related to "prolonged sleep" was required by any government standard. *Id.* at 108:18-21. In response, Dr. Glancey stated that he was going to need to refer to the government standards which were in his file, and he began to look through his file to consult the standards. *Id.* at 108:22-109:4. He specifically asked defense counsel: "So give me a few minutes." *Id.* at 109:3-4. Despite this reasonable request, defense counsel forged ahead and continued to try to pin down the witness when the witness had explicitly said he needed to actually look in his file to find the standard. *Id.* at 109:5-15. The witness then reminded defense counsel he was looking to find the standard. *Id.* at 109:12-15. Despite this, defense counsel could not help it and again rudely suggested that the witness did not know the answer. *Id.* at 109:16-20. At this point, Mr. Bosworth properly lodged an asked-and-answered objection but did not instruct the witness not to respond. *Id.* at 109:21-110:1. There was nothing improper about this objection, which was based upon defense counsel's improper questioning.

Toward the end of the deposition, defense counsel wrongly suggested that Dr. Glancey had not reviewed certain documents that Kids 2 had produced in the case despite the fact that Dr. Glancey's report expressly listed "documents produced by Kids 2" as something he reviewed in forming his opinions. *Id.* at 263:22-264:10. Notably, there were tens of thousands of documents produced by Kids 2 in this litigation. Therefore, defense counsel was playing words games by pointing out that Dr. Glancey's report did not explicitly list "QRB documents" even though the "QRB documents" are documents that were part of the "documents produced by Kids 2" listed

explicitly in Dr. Glancey's report. This conduct was done in bad faith and was oppressive, embarrassing, and annoying and thus warranted objection under Rule 30.

Absent from defendant's motion is the fact that Mr. Bosworth sought court intervention during the deposition of Dr. Glancey due to defense counsel's oppressive and bad-faith questions. *Id.* at 223:21-225:6. The Court's judicial assistant, Deborah Gregg, answered the phone. *Id.* at 225:7-19. During this call, Mr. Bosworth identified that he needed judicial intervention due to misconduct that was occurring. *Id.* However, Her Honor was on the bench at that time so no judicial intervention understandably could be had at that time under Rule 30. *Id.* at 225:20-228:5. The following day, Mr. Bosworth's employment was terminated.

Most egregiously, at around 4:13 p.m. defense counsel requested to go on a break. *Id.* at 341:14-16. This break lasted nearly twenty minutes. *Id.* at 341:21-22. Perhaps recognizing that Mr. Bosworth had already placed a call with the Court under Rule 30, defense counsel tried to flip the script and terminated the deposition before plaintiffs' counsel had an opportunity to ask Dr. Glancey any questions. *Id.* at 341:23-343:4. At that time, over Mr. Bosworth's objections, all of the defense lawyers left the deposition, preventing Mr. Bosworth from asking any questions. At no point did defense counsel attempt to contact the Court to resolve this issue before unilaterally leaving.

### E.  Sanctions are not warranted.

When reviewed in its entirety, the deposition transcripts reveal nothing more than several contentious depositions. All of Mr. Bosworth's objections and instructions not to answer that defendant complains of were properly made pursuant to Rule 30(d)(3)(A) for being embarrassing, oppressive, annoying, and conducted in bad faith. This is permitted. *E.g.*, *Marcina*, 18 F.R.D. 254 (questions that would have required the witness to exercise mere "conjecture," because there was

no basis for the questions, were unreasonably embarrassing under Rule 30(d) and thus the lawyer properly instructed the witness to not answer these questions);  *Covad Communications*, 267 F.R.D. 14 (sanctions denied because lawyer's instructions to witness to not answer various questions was proper since the questions lacked any foundation and proper form); *Dianon Sys. Inc.*, 240 F.R.D. 40 (instruction not to answer questions was not inappropriate where the questions were "improper and the Court would have stricken any answer" anyway); *Sullum*, 2022 WL 4122195, at *6 (counsel properly instructed witness to not answer questions that were "cumulative and/or duplicative" pursuant to Rule 30); *Baloga*, 2017 WL 2405235 (motion for sanctions denied and Court deemed counsel's instructions to witness to not answer questions appropriate given that the questions "ranged too far afield" and were thus "oppressive")

But unlike most lawyers, Mr. Bosworth never had an ample opportunity to seek court intervention under Rule 30 due to defense counsel's conduct. Though Mr. Bosworth attempted to contact the Court during the deposition of Dr. Glancey which defense counsel prematurely terminated on November 17, 2022, the Court (understandably) was unavailable as Her Honor was on the bench. However, Mr. Bosworth was abruptly terminated the following day, November 18, 2022, around noon. This prevented Mr. Bosworth from ever seeking intervention or redress pursuant to Rule 30.

Neither defendant's nor Kline & Specter, P.C.'s brief gave proper context to the questioning of defense counsel during the depositions of the plaintiffs' expert witnesses. Neither of these briefs pointed out the fact that Mr. Bosworth instructed a witness (Dr. Mannen) not to respond to a bulk of the questions cited by defendant in order to protect a privilege. Neither brief acknowledged the harassing, oppressive, or embarrassing nature of the questions defense counsel asked. Nor did either brief bring the Court's attention to the fact that Mr. Bosworth attempted to

seek court intervention on November 17, 2022, and could never again seek such intervention following November 18, 2022.

Despite trying, defense counsel is unable to illustrate any prejudice suffered by any of Mr. Bosworth's objections. There were no questions that defense counsel did not actually receive answers to. The only questions defense counsel claims it did not receive answers to were questions that defense counsel had asked over and over again, oppressing the witness and acting in bad faith. In those limited circumstances, which amount to a few times per witness during 7-hour depositions, no prejudice was suffered. Moreover, in those limited circumstances, defense counsel had already received the answer they were looking for but were oppressing, embarrassing, annoying, and acting in bad faith toward the witnesses by repeating the same questions over and over again.

## V.   CONCLUSION

Based on all the foregoing, Bosworth respectfully requests that this Court deny Defendant's Motion for Sanctions.

BOSWORTH LAW, LLC

Respectfully submitted,


/s/ Thomas E. Bosworth_____
THOMAS E. BOSWORTH, ESQ.

Date: March 23, 2023

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing Thomas E. Bosworth, Esq.'s Response in Opposition to Defendant's Motion for Sanctions and a Reply in Opposition to Kline & Specter, P.C.'s Response in Opposition to Defendant's Motion for Sanctions has been served on counsel for all parties via the CM/ECF system of electronic notification.

**BOSWORTH LAW, LLC**

Respectfully submitted,

*/s/ Thomas E. Bosworth*
THOMAS E. BOSWORTH, ESQ.

Date: March 23, 2023