# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TANYA MCCARTNEY** and **MARK MONTGOMERY III**, Individually and as Administrators of the **ESTATE OF KAIDON A. MONTGOMERY**,<br><br>             Plaintiffs,<br><br>      vs.<br><br>**KIDS 2, INC. f/k/a KIDS II, INC.**; and **KIDS 2, INC. d/b/a, t/a, a/k/a INGENUITY**,<br><br>             Defendant. | Civil Action No.: 3:21-CV-166<br><br><br>**KIDS 2, INC.'S REPLY TO T. BOSWORTH'S OPPOSITION TO KIDS2'S MOTION FOR SANCTIONS** |

## Prefatory Statement

On March 28, Kids2 and Plaintiffs settled the underlying lawsuit. As such, the non-monetary sanctions originally sought by Kids2 are moot, and Kids2 is not seeking or recommending monetary sanctions against Plaintiffs or Kline and Specter. What remains is the fact that Kids2 has incurred significant expense as a result of Bosworth's improper behavior. To compensate Kids2 for the needless costs incurred and to vindicate the integrity of the judicial process, Kids2 continues to seek the following monetary sanctions: the fees and costs of attending and taking the depositions, the fees and costs of briefing this motion, and the fees and costs of attending the hearing on this motion. Upon request, Kids2 will provide an accounting of these costs and fees.

## Introduction

Thomas Bosworth's Opposition emphasizes his distorted approach to proper deposition objections, the law, and basic principles of professionalism.

What rings loudest in his brief is the complete silence on his incivility. He fails to acknowledge a single instance of misconduct, of which the examples are numerous and egregious, as detailed in the briefing to date. *See, e.g.*, Mot. for Sanctions, [Doc. 69, Ex. C] pp. 81:10–82:10;

272:20–275:11; 264:3–15 (referring to Kids2 or its counsel as "stupid," "schills," and "liars"). Bosworth offers no justification why this conduct should not be sanctioned.

As to the issues Bosworth attempts to address, he is wrong on the law and the facts. He argues, for instance, that his more than 150 improper objections, including more than two dozen instances in which he instructed Plaintiffs' experts not to answer, were not prejudicial. Putting aside the fact that repeated interruptions and delays are themselves prejudicial, Bosworth's incessant speaking objections and commentary influenced the testimony and prevented fair examination. The transcripts and video bear this out, repeatedly.

Incredibly, Bosworth also argues he was entitled to instruct his expert witnesses not to answer various questions because Rule 30(d)(3)(A) gives attorneys wide latitude to unilaterally "limit" depositions. It doesn't. Rule 30(d)(3)(A) authorizes a deponent or party to *file a motion* to terminate or limit a deposition, but says nothing about instructing witnesses not to answer. Under modern practice, Bosworth's instructions not to answer were categorically improper and prejudicial. By instructing experts not to answer, Bosworth prevented Kids2 from obtaining discoverable information from the deponents, confirming the scope of their opinions, and probing the bases therefor.

There simply is no excusing Bosworth's conduct during the depositions of his experts. It was contrary to law and decorum. It caused harm. Left unchecked, it is likely to recur. Kids2 therefore requests that Court to grant its motion for sanctions.

## Argument

### I.  Bosworth's Opposition Misstates the Law.

Bosworth argues Rule 30 authorized him to instruct witnesses not to answer questions for a wide variety of reasons, including to avoid annoyance, embarrassment, or oppression. Putting

aside that none of Kids2's questions risked any such outcomes, Bosworth is simply wrong about the law.

Under Rule 30(c)(2), a person "person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. Rule 30(c)(2). Rule 30 confers no additional authority for attorneys to instruct witnesses not to answer.

Bosworth contends that Rule 30(d)(3) provides alternative grounds for instructing a witness not to answer. Not so. Rule 30(d)(3) permits a deponent or party to "*move* to terminate or limit [the deposition] on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. Rule 30(d)(3). In other words, Rule 30(d)(3) authorizes the filing of a motion to terminate or limit a deposition. It does not authorize an attorney unilaterally to terminate or limit a deposition. To give effect to this provision, an attorney may provisionally instruct a witness not to answer, but only for the purpose of filing a contemporaneous motion to limit or terminate:

> A lawyer who thinks that questioning has become so unreasonable as to warrant instructing the witness not to answer can do so only for the purpose of seeking a protective order from the judge under Rule 30(d)(3). Ordinarily, when counsel instructs a witness not to answer so that he may bring a motion under Rule 30(d)(3), he should suspend the deposition and seek an immediate ruling rather than wait until the deposition is over.

Fed. R. Civ. P. Rule 30 (Practice Commentary—instructions not to answer). Thus, as many courts have ruled, Rule 30(d)(3) "requires that the motion be filed during the deposition." *Mitchell v. Developers Diversified Realty Corp.*, No. 09-cv-224, 2010 WL 11530460, *2 (E.D. Tex. Aug. 6, 2010); *see also Allred v. Moroni Feed Co.*, No. 14-cv-00405, 2015 WL 1467587 (D. Utah Mar. 30, 2015) (noting that if counsel believed the line of questioning was in bad faith, counsel should have stopped the deposition and immediately sought a protective order); *Natural-Immunogenics*

*Corp. v. Newport Trial Grp.*, No., 15-02034, 2017 WL 10562691, *5 (C.D. Cal. Aug. 7, 2017) ("Rule 30 . . . requiring an attorney to end the deposition, rather than direct a witness not to answer, incentivizes attorneys to act only in extreme cases. In contrast, Baker's construction would transform harassment objections into shields against probing questions. This would hinder depositions' truth-seeking role.").

Bosworth also cites a number of cases which are either inapplicable entirely or can be quickly distinguished from the conduct at issue here. Citing the 1955 decision *Marcina v. Smith*, 18 F.R.D. 254 (E.D. Pa. 1955), he suggests "lack of basis" justifies an attorney's instructions not to answer. However, there was no instruction not to answer by an attorney in *Marcina*. Instead, a medical doctor defendant refused to answer questions about the diagnosis of medical issues he was not competent to answer because they were beyond his training and experience. *Marcina* is not instructive here.

Bosworth also asserts that "form" and "foundation" objections can be properly followed by an instruction not to answer. However, in the *Revonet* case Bosworth cites in support, the court observed that "for the most part, he [counsel] made non-speaking objections to preserve a record of his objection and that the objections were not more than a sentence long. . . While I am troubled by Covad's counsel occasional instruction to the witness not to answer even though the question did not require the disclosure of privileged information, there were not so many of these instances as to permit characterizing him as obstructionist." *Covad Comm. v. Revonet Inc.*, 267 F.R.D. 14 (D.D.C. 2010). The same cannot be said for Bosworth. Regardless, if "form" and "foundation" objections opened the door to instructing a witness not to answer, nearly every deposition objection would be followed by an instruction not to answer.

Bosworth also cites *U.S. v. Dianon Systems Inc.*, a case involving a 30(b)(6) deposition, but fails to mention the court in *Dianon* noted that "[o]rdinarily, it is improper for counsel to direct

4

a witness not to answer a question posed at a deposition, even if the question is improper or beyond the scope of a deposition notice" and that "in such circumstances, the parties should suspend the deposition to seek a ruling from the Court on the propriety of the questions posed." 240 F.R.D. 40, 43 (D. Conn. 2006).

Bosworth cites *Stevens v. Sullum*, 2022 WL 4122195, *6 (M.D. Pa. Sept. 2022), for the proposition that counsel may instruct witnesses not to answer questions that are repetitious or have already been asked and answered. But it is well-settled in this State's federal courts that counsel may not instruct a witness not to answer on those grounds. *E.g.*, *Hearst/ABC-Viacom Entm't Servs. v. Goodway Mktg., Inc.*, 145 F.R.D. 59, 63 (E.D. Pa. 1992). The issue in *Stevens* was whether to compel a second deposition due to a single instruction not to answer at the first deposition. The court denied a second deposition on the ground that the question at issue had in fact been answered previously. The court by no means condoned the practice of instructing witnesses not to answer.

Last, Bosworth's reliance on *Baloga v. Pittston Area Sch. Dist.*, 2017 WL 2405235 (M.D. Pa. June 2, 2017), is misplaced. The line of questioning at issue regarded wholly irrelevant incriminating questions about the deponent's personal back taxes, which were in no way related to the underlying litigation. The *Baloga* holding is irrelevant to the questions asked at depositions in this case, which pertained to the expert deponents' opinions and bases.

## II.    Bosworth Engaged in Sanctionable Conduct at the Deposition of Erin Mannen.

Bosworth claims he was within his rights to instruct Mannen not to answer questions about an analysis she did for the CPSC because she was legally prohibited from doing so and questions about the analysis were somehow intended to annoy, harass, oppress, and embarrass. Contrary to the plain requirements of Rule 30(d)(3), however, Bosworth did not file a motion to limit or terminate. Nor did he have a colorable basis for doing so.

Mannen's opinions in this case are directly tied to her "government funded" research. In support of her opinion that the Kids2 Bouncer is dangerous, Mannen cites the very "government funded" research about which Bosworth didn't want her to answer questions. And so, when Mannen testified that she was unable to provide answers to questions related to the data, methodology, and history of that "government funded" research, Kids2's counsel naturally sought to examine Mannen on these issues to the fullest extent possible, as its counsel politely explained during Mannen's deposition:

```
 3              MS. BULLARD:  Yeah.  Your objection is
 4         on the record; I understand it.
 5    My goal is just to understand the parameters of what can and
 6    cannot be discussed, and then I will move on, Doctor.
 7        I am not intending to harrass.  I am simply trying to
 8    understand the confines of what work you've done.  And if you
 9    feel that you can't discuss something, you can tell me, and I
10    will move on, okay?
11    A    Okay.
```

Mot. for Sanctions, [Doc. 69, Ex. D] p. 21:3-10.

As Bosworth concedes, there were over 25 instances where Mannen refused to answer questions about the basic facts underlying her research. The unavailability of such information is contrary to Rule 26 and made it impossible for Kids2 or its experts to test or validate Mannen's conclusions. Further, Bosworth's wordy objections to questions about the facets of the study that Mannen refused to testify about only amplified the prejudice to Kids2, because Bosworth obstructed a completely fair line of questioning intended to determine the universe of information being shielded behind Mannen's claimed confidentiality regarding the data and methodology underlying the study she conducted that is paramount to her expert opinions in this case.

Bosworth also protests instances where counsel asked Mannen if she had seen or relied on certain photographs provided in discovery in arriving at her expert opinions. The law according to Bosworth is that unless counsel first shows a deponent the photograph, any question about that photograph is oppressive, harassing, annoying, and done in bad faith. But Bosworth of course cites **<u>no law</u>** in support of this claim, because there simply is no rule or custom requiring an examining attorney to show a document to a witness before asking the witness questions about the document.

III.     **Bosworth Engaged in Sanctionable Conduct at the Deposition of Wayne Ross.**

Bosworth's own rendition of the Wayne Ross deposition highlights Bosworth's witness coaching. At page 8 of Bosworth's brief, he concedes he interjected to refer to Ross's prior testimony following a question about the source of a fluid stain observed at the scene. It is not proper for counsel to summarize a witnesses' prior testimony to influence the witnesses' answer to a pending question. *See Hall v. Clifton Precision*, 150 F.R.D. 525, 530 (E.D. Pa. 1995) (noting the rules "contain no provision allowing lawyers to interrupt the trial testimony of a witness to make a statement"). Ross—not attorney Bosworth—should have testified about the bases for his opinion as to the source of fluid observed at the scene.

Bosworth also mischaracterizes counsel's questions about the scientific basis of Ross's own written expert opinion as somehow harassing. Ross offered an opinion about the duration and extent of the decedent's pain preceding death. Counsel asked questions related to this opinion and specifically the science behind an infant's experience with a SIDS death. There is credible science, for example, suggesting that when an infant's carbon dioxide levels increase to a fatal level, the infant enters a state of calm narcosis prior to death. Questions posed to Ross about this science, which contradicts his expert opinions, were eminently appropriate. Bosworth's hyperbole that counsel "went there, and disgustingly tried to suggest that infants' brains do not allow infants to feel pain" is disingenuous at best.

**IV.     Bosworth Engaged in Sanctionable Conduct at the Deposition of Dennis Rosen.**

Bosworth explains how he deemed routine questions about what opinions Rosen would offer at trial and the bases of those opinions to be annoying and repetitive. While Bosworth presumes to know why counsel posed a question about whether Rosen, a medical doctor, intended to offer opinions about the product's warnings, the question was actually posed because Rosen is not a human factors expert, and his expert report contained no warnings opinions. In fact, Plaintiffs disclosed a separate warnings expert, and so it was reasonable for Kids2's counsel to confirm that Rosen wasn't holding himself out as a testifying expert regarding warnings.

Bosworth also argues it was annoying, harassing, and oppressive for counsel to ask Rosen the precise angle which in his opinion produces an unsafe environment for an infant occupant and whether literature exists which supports that the angle is dangerous for an infant like the decedent who had well-developed neck strength and was born full term. Amazingly, Bosworth claims the questioning was inappropriate because Rosen's opinion does "not rely upon a specific *number or degree*." Bosworth Opp. p. 10. And on that theory, Bosworth not only objected but spoke Rosen's prior testimony into the record in response to Kids2's questions, which, according to Bosworth, "did not suggest [the] answer." Bosworth Opp. pp. 10-11. Kids2 disagrees that Bosworth was even accurately summarizing Rosen's prior statements, but regardless, it was completely improper for Bosworth to interject substantive responses to questions he felt were somewhat annoying, repetitive, or oppressive. *See Peronis v. United States*, 2017 WL 696132, at *1 (W.D. Pa. Feb. 17, 2017)(stating counsel is forbidden from "[a]ssisting the witness in answering questions, ***through testimony or comments*** which might suggest or limit a witness's answer").

**V.     Bosworth Engaged in Sanctionable Conduct at the Deposition of James Glancey.**

Bosworth remarked in his Opposition about Kids2's "self-created" difference between bouncers and inclined sleepers, and that counsel's attempts to clarify whether Glancey

characterized the bouncer seat as an inclined sleeper were somehow harassing, embarrassing, oppressive, annoying, and in bad faith. Bosworth's claims are manifestly wrong. *Infant Bouncer Seats* and *Inclined Sleep Products* are terms of art under federal law. The CPSC regulates these products separately. The CPSC defines Inclined Sleepers as any "product with an inclined sleep surface greater than ten degrees that is intended, marketed, or designed to provide sleeping accommodations for an infant up to 1 year old." The product at issue is an Infant Bouncer Seat. The federal safety standard on Infant Bouncer Seats (16 C.F.R. Part 1229) defines an Infant Bouncer Seat as "a freestanding product intended to support an occupant in a reclined position to facilitate bouncing by the occupant, with the aid of a caregiver or by other means." Kids2 was entitled to inquire about Glancey's understanding of these differences as they relate to his expert opinions, especially because Plaintiffs' experts (including Glancey) have consistently, wrongly referred to the subject product as an Inclined Sleeper.

Bosworth also inaccurately describes questioning regarding the fact that when Glancey wrote his report in this case regarding Kids2's product design process he had not actually reviewed Kids2's design documents. At deposition, Glancey unequivocally confirmed that he produced the entirety of his file materials to Kids2 on the morning of his deposition. Glancey Tr. [Doc. 82, Ex. C] 270:22–271:10:

> Q: is it fair to say that you produced everything this morning that was in your file, Dr. Glancey?
> A: Yes. Absolutely.
> Q: Everything that you sent – okay.
> A: Absolutely. I didn't even change the name. you should be able to map them to what you had produced to Plaintiff Counsel pretty easily.

None of Kids2's design documents were included with Glancey's file materials, notwithstanding that Kids2 timely produced those documents well in advance of the report and deposition. Kids2's suspicion that Glancey had not been given the Kids2 design documents was

then confirmed when Glancey unambiguously testified that he never saw Kids2's design documents (known as Quality Review Boards or QRBs):

> Q: you don't recall reviewing any QRBs [Quality Review Boards, aka Kids2's hazard assessment process]; fair statement?
>
> A: Not for a bouncer, no. . . I can honestly say I can recall that I never saw a single document labeled QRB at all. . . I know I never saw a QRB document labeled QRB in any way.

Glancey Tr. [Doc. 82, Ex. C] 270:22–271:10. Bosworth cannot rewrite history to change this fact now, though he is trying very hard to do just that. He not only took close to ten deposition pages to shut down Kids2's questioning of Glancey about whether he had ever seen Kids2's design documents but he repeatedly called Kids2's counsel a liar for suggesting the truth—that Glancey had not reviewed the documents.[1]

Bosworth notes that he attempted to call the Court during Glancey's deposition due to Kids2's counsel's "oppressive and bad-faith questions." All that is needed is a review of the pages of the transcript leading up to Bosworth calling the Court to reveal that Kids2's questions were entirely reasonable and appropriate.

Bosworth theorizes that Kids2's counsel ultimately terminated Glancey's deposition to "flip the script" because Bosworth had placed a call with the Court. In reality, shortly after Bosworth asked Kids2's counsel if she had "a hearing issue, a personality disorder, or a comprehension issue,"[2] Kids2's counsel took a break, convened with co-counsel (including local counsel, who Kids2 had requested attend this deposition in person in light of Bosworth's abhorrent behavior at the prior three depositions), and they mutually concluded that Bosworth's conduct was

---

[1] Glancey Tr. [Doc. 82, Ex. C] 264-280.
[2] Mot. for Sanctions [Doc. 69, Ex. C] p. 325:9–18.

beyond the pale and Court assistance should be sought before going any further with depositions in this case.

## VI.    Sanctions are Appropriate Under the Circumstances.

Kids2's requested sanctions are well within the Court's discretion and would also achieve the dual purposes of amelioration and deterrence. *See Santos v. U.S. Dep't of Hous. & Urb. Dev.*, No. 89-2892, 1992 WL 165677, at *10 (E.D. Pa. July 2, 1992) (explaining sanctions can be punitive or compensatory). Even Plaintiffs admit Bosworth's conduct caused harm. And indeed, Bosworth's conduct was not only offensive, wasteful, and costly; it prevented fair examination of Plaintiffs' experts. Kids2's proposed sanctions including costs and fees for bringing its Motion for Sanctions, costs and fees for attending expert depositions, limits on the experts' opinions, and/or stipulations as to certain issues about which Bosworth obstructed fair examination of his witnesses are reasonable, tailored and should be granted.

## VII.    Conclusion

For the foregoing reasons, and those set forth in Kids2's Motion for Sanctions [Doc. 69] as well as Kids2's omnibus Reply to Pls' Opposition thereto [Doc. 92], Kids2 requests the Court grant its request for monetary sanctions against Bosworth.


**Nelson Mullins Riley & Scarborough LLP**

Dated: March 30, 2023.                    *s/Jennifer L. Bullard*_____
                                          Alana K. Bassin, Esq. (Pro Hac Vice)
                                          Jennifer L. Bullard, Esq. (Pro Hac Vice)
                                          Jenna Durr, Esq. (Pro Hac Vice)
                                          1600 Utica Avenue South, Suite 750
                                          Minneapolis, MN 55416
                                          T: (612) 464-4500
                                          F: (612) 255-0739
                                          alana.bassin@nelsonmullins.com
                                          jennifer.bullard@nelsonmullins.com
                                          jenna.durr@nelsonmullins.com

-and-

William J. Conroy, Esq.
Yasha K. Shahidi, Esq.
Attorney ID Nos.: PA 36433/ PA 322044
Campbell Conroy & O'Neil, PC
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
T: (610) 964-6387
F: (610) 964-1981
wconroy@campbell-trial-lawyers.com
yshahidi@campbell-trial-lawyers.com

*Attorneys for Defendant Kids2, Inc.*

## CERTIFICATE OF SERVICE

I, Jennifer L. Bullard, Esq., hereby certify that the foregoing ***KIDS 2, INC.'S REPLY TO T. BOSWORTH'S OPPOSITION TO KIDS2'S MOTION FOR SANCTIONS*** by filing the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

**Nelson Mullins Riley & Scarborough LLP**

Dated:  March 30, 2023.

*s/ Jennifer L. Bullard*
Alana K. Bassin (Pro Hac Vice)
Jennifer L. Bullard, Esq. (Pro Hac Vice)
Jenna Durr, Esq. (Pro Hac Vice)
*Attorneys for Defendant Kids2, Inc.*